No. 9508.

HOEHNE DITCH COMPANY *v.* JOHN FLOOD DITCH COMPANY.

1. STATUTE OF FRAUDS—*Contract for the Carriage of Water.* A verbal contract by the proprietors of an irrigating ditch to carry the waters of another ditch is not within the statute of frauds. Yunker v. Nichols, 1 Colo. 551, followed.

2. ——*Part Performance.* Verbal contract to carry water for 99 years was completely observed by the parties during the first irrigation season. *Held* it could not be said that the contract was only partly performed, in the ordinary sense.

*Error to Las Animas District Court, Hon. Harry S. Class, Judge.*

Mr. FORREST C. NORTHCUTT and Mr. JESSE G. NORTHCUTT, for plaintiff in error.

Mr. HENRY HUNTER and Mr. FRED A. SABIN, for defendant in error.

Mr. Justice Scott delivered the opinion of the court.

THE plaintiff in error, plaintiff below, for many years prior to the institution of this suit, owned and operated the Hoehne ditch, irrigating lands thereunder, and diverting water from the Purgatoire, or Las Animas, River, in Las Animas County, having its headgate a few miles below the town of El Moro. In the year 1909, the headgate of plaintiff's ditch was destroyed by flood, whereupon the plaintiff entered into a contract with the Model Land and

Irrigation Company, which owned and operated a ditch diverting water from the same stream at a point above plaintiff's headgate, wherein the Model Company, for a consideration, agreed to carry the waters to which the plaintiff was entitled, to a point designated, for a period of ninety-nine years. This contract was in operation and the water to which plaintiff was entitled was carried through the Model ditch until June 4, 1918.

The defendant Ditch Company, before and during the period above stated had a ditch through which it diverted water from the same stream at a point between the point of diversion of the Model ditch, and the old point of diversion by plaintiff. Controversy arose between the Model Company and the plaintiff, and the plaintiff sought to make a contract with the defendant Ditch Company whereby its waters might be carried through defendant's ditch.

The complaint alleges the consummation of such a contract between the plaintiff and the defendant, the John Flood Ditch Company, whereby the latter agreed to carry the waters of plaintiff through defendant's ditch at the agreed price of one thousand dollars per year for a period of ninety-nine years. It is alleged that this contract was verbal, but intended by the parties to be reduced to writing and executed; that after the said agreement was made, and with the knowledge and encouragement of defendant, the plaintiff instituted suit in the District Court of Las Animas County to cancel its contract with the Model Company, in which action, the Model Company filed its written consent to such cancellation, and a decree was entered cancelling such contract.

It is further alleged that thereafter and with the consent, advice and encouragement of the defendant company, and in pursuance of their said agreement, a division box was placed by the plaintiff in the defendant's ditch, and on about June 9th, 1918, the water to which plaintiff was entitled under its decrees was thereafter turned in by plaintiff and carried by defendant according to the terms of the agreement until September 26th, 1918.

It is further alleged that with the mutual understanding of the requirements of law, and in accordance with the desire of both parties, after a discussion of the matter between them, and for the purpose of making effective the terms of the contract and in compliance with law, the plaintiff, on the 18th day of June, 1918, filed its petition in the District Court of Las Animas County for a decree changing the point of diversion of its waters from the headgate of the Model Company to the headgate of the ditch of the defendant, which decree was entered on the 31st day of August, 1918, granting the change. Also, that prior to obtaining this decree, so changing the point of diversion, and prior to the institution of such suit, and in accordance with the consent and agreement of the parties, the plaintiff sought and obtained from the Division Superintendent leave to change the point of diversion under a joint arrangement, and under the theory of having loaned its waters to defendant, but in fact and with the knowledge of the parties, including the Division Superintendent, this was for the purpose of enabling the parties to carry out their contract until such time as the decree to change the point of diversion might be finally entered.

The complaint then alleges in substance that notwithstanding the plaintiff and defendant through their respective officers and agents met from time to time for the purpose of crystallizing their agreement theretofore made, into a written contract, no controversy arose and there was no suggestion of a change in any of the stipulations theretofore agreed to, but that finally the defendant denied ever having entered into a contract, and repudiated any obligation to the plaintiff, declining to carry its water, ordering the same shut out of the division box, and finally, on the day after the summons and notice of application in this case were served, tore out the division box.

The defendant answered in substance: "1. That it never entered into any contract, orally or otherwise, with the plaintiff to carry its water.

2. That what it did do in the way of carying water for the plaintiff was without charge, and purely as an accommodation.

3. That whatever contract was attempted to be entered into, if any, was not made with the authority and under the direction and with the consent of the stockholders or board of directors of the defendant company; that such attempt, if ever made, was with the president and secretary of the company only, and that the subject matter thereof was *ultra vires*, both as to the corporation and as to the power of the officers.

4. That the contract, if ever verbally agreed to, was not to be performed under the terms thereof within one year, and was, therefore, void under the statute of frauds, and unenforcible."

The defendant demurred to the evidence of plaintiff, which demurrer was sustained by the court, and judgment rendered dismissing the complaint and suit without prejudice. The defendant offered no testimony and therefore there is no conflicting evidence in the case.

The plaintiff seems to have proven clearly the allegations of fact set forth in its complaint, and the only questions to be determined are as to conclusions of law, raised by the fourth proposition as above set forth.

As we see from the record, it appears that the only directors of the defendant company were Mary John, president; William John, her brother, secretary; and their mother.

The circumstances under which the agreement was made were that there had been much discussion and for some time among the persons connected with both plaintiff and defendant corporations, concerning the differences between plaintiff and the Model Company, and the desire of the plaintiff to be relieved of its agreement with that company.

Mr. Jeffreys, who seems to have been the manager for the plaintiff testifies in substance that: "In the early part of May, I spoke to her (Mary John) and told her that prob-

ably we would find it necessary to endeavor to cancel our contract with the Model Ditch, and I asked her about carrying the water.  She said that they would carry the water. That was all she said at the time.  Shortly prior to instituting the suit (meaning the suit to cancel the Model contract) we had another conversation.  I said, 'Miss John, I understand from one of our people in the·ditch that you will carry the Hoehne water', and she said 'Yes'.  She understood from the other party what the consideration was, and I told her what I understood from him, that the water would be carried for one thousand ($1,000) dollars a year, and she said that was 'all right'.  We held our meeting (meaning the meeting of the plaintiff's directors) and after holding the meeting, Miss John came to my office, and I said to her, 'Miss John, we are going to institute a suit to cancel the contract with the Model people, and I would not enter this suit, except that I know that you are going to carry the water for the Hoehne ditch as agreed with the other party.'

Q.   What did she say?

A.   Well, I think that she said, 'That is fine.'  "

It seems that at this time Will John was absent from the state, and it was agreed that they should wait for his return before executing the written agreement.   In the meantime, the plaintiff had secured the cancellation of the Model contract and proceeded, as before stated, with the matter of securing the decree changing the point of diversion.

It also appears that there were two brothers owners of water rights, and that their supply was carried through defendant's ditch and who objected to the agreement between plaintiff and defendant, on the ground that it might interfere with the service to them.   They made their protest to Mary John, president of defendant corporation, who assured them that it would not impair their service, and that they were too late in any event, for the reason that the agreement had been entered into.

It also appears that the parties plaintiff and defendant, at a time after Will John had returned, met at the office of

Mr. Coil, an attorney acting for both parties, for the purpose of drafting and executing the contract; that at this time they had the Model contract before them, and all agreed that this contract should be followed in form and substance, except as to names and consideration, with some other changes not material here.

This form contained a provision as to the time for which the contract was to run, of ninety-nine years. However, there arose at this meeting the question as to whether or not the agreement would, under the law, make the defendant a common carrier, and thereby cause an increased tax upon defendant's property. By reason of this question only, the agreement was not drafted and executed at the time, and it was agreed that the parties should seek advice of Miles G. Saunders, an attorney at Pueblo, upon the question thus raised.

This was later done and Mr. Saunders apparently did not determine the legal question, but suggested it might be avoided by the process of loaning water, which was adopted and followed in the manner heretofore suggested.

Under this state of facts, there can be no question but that the minds of the parties had met in agreement, and we have only to determine whether or not such an agreement is valid and binding in the sense that it may be specifically enforced.

The contention of the defendant, which apparently was sustained by the court, is: "(1) That the contract in being incapable of performance within one year from its date, and not in writing, is within our statute of frauds, and void, and that part performance does not take it out of the statute of frauds."

As against this, it is contended by the plaintiff in substance, that: "The contract is one relating to real property, and that part performance thereof takes it out of the statute of frauds, or rather estops the defaulting party from pleading the statute of frauds, and becomes enforceable at the suit of the aggrieved party upon such part performance.

Second: That even if not a contract for an interest in real estate, but such as held by the court, viz: a contract for service, it is nevertheless under our statute removed from the statute of frauds, and is subject to specific performance upon the part performance being established by proof.

Third: Even though the contract for its legality may have required the authority of the board of directors, yet being entered into by the president and secretary of the company who likewise constitute a majority of the board of directors, and its benefits being accepted and retained by the corporation, with knowledge of the facts, it is estopped from ascertaining the illegality."

It is not disputed that payment of the consideration due was tendered to and refused by defendant. So that in all particulars it appears that the plaintiff had fully complied with all the provisions of its agreement.

It is contended that the agreement being one which was not to be fully performed within one year is void under the statute of frauds, and here arises the serious question of the case. The very nature of this case as appears from the above statement of facts necessarily involves a public policy as indicated by the constitution and statutes and as construed by our courts. There is more than a private interest involved.

It appears to us that the principle involved in this question has in effect been determined by our courts in our very early history and consistently followed. The case of *Yunker v. Nichols*, 1 Colo. 551, involved the precise question of whether or not a verbal contract relating to the carrying of water was within the statute of frauds. It is argued here by the plaintiff that the contract is one involving an interest in real property and that for such reason may be enforced under the rule of part performance, which takes it out of the statute of frauds, and on the contrary it is contended that it is purely personal in its nature and is within the statute.

We think that this distinction is not material here and discussion of the question not important nor necessary.

The Yunker case was determined by a court consisting of three of our pioneer judges, very much revered, and the great ability of each will forever remain unquestioned. They did much to formulate the now fixed principles concerning the great industries of mining and irrigation. In the case cited, Justice Hallett wrote the opinion of the court; Justices Belford and Wells each wrote a learned and exhaustive opinion. These three opinions are well worthy of the careful examination and consideration of lawyers.

Yunker and others constructed a ditch which all were to use for the irrigation of their respective lands. This was under a verbal agreement. After construction and use, the defendant Nichols, whose lands were above those of Yunker, diverted the water and thus deprived Yunker of the use of his claimed water. The case turned upon the question of whether or not the verbal agreement between the parties was within the statute of frauds. It was there held that such a verbal contract was not within the statute of frauds, and further, that it involved a right that may be acquired under the laws of the state independent of consent or contract.

In this case the contract cannot be said to be but partly performed in the ordinary sense, for it was as completely performed for the first irrigation year as it could have been in any one of the succeeding ninety-eight years.

In the case of *McClure v. Koen,* 25 Colo. 284, a verbal contract between the parties provided that Koen should have the use of water through the canal for a specific tract of land, in consideration for his assistance in the construction and maintenance of the canal. After compliance with the agreement and use of the water for some years, Koen was denied this right. Under that agreement, it must be construed to intend the perpetual use, and not limited to any number of years as in this case. In an action to compel the enforcement of that contract, the court said: "It is further insisted, however, that the evidence having disclosed that the agreement relied on is an oral one, the statute of frauds may be invoked to defeat its enforcement; and furthermore,

that the right sought to be established, being an easement in the ditch and an interest in realty, it is not transferable except by deed; and therefore, that this agreement is ineffectual to vest title in the plaintiff.  A sufficient answer to this contention is that the undisputed evidence clearly establishes the agreement, and a complete performance of its conditions upon the part of the plaintiff and his grantor, possession taken thereunder and a user of the water for several years.

It is well settled in this jurisdiction that, although an oral contract relating to realty is within the statute, where a consideration has passed, and it has been fully performed by both parties and possession taken in pursuance thereof, the bar of the statute is removed and equity will enforce the right thus acquired. *Schilling v. Rominger,* 4 Colo. 100; *Lipscomb v. Nichols,* 6 Colo. 290; *Tynon v. Despain, supra.*   (22 Colo. 240.)

Under this rule the plaintiff established his right to an interest in the ditch that equity will recognize and protect; and a decision as to whether or not such interest is ordinarily transferable otherwise than by deed, is unnecessary to the determination of the case."

Certainly that agreement for the perpetual use was not to be completely performed within one year, and its performance for a few years was there held to be sufficient performance of the contract to take it out of the statute.

In such cases the court generally treat such contracts as executed rather than executory in their nature, in the application of the doctrine of part performance.   It will be noted that our statute recognizes this doctrine of the equity powers of the court, by declaring in express terms that: "Nothing in this chapter contained shall be construed to abridge the powers of courts of equity to compel the specific performance of agreements, in cases of part performance of such agreement."   2nd Mills, sec. 3063, p. 1367.   It will be seen that the language of the statute makes this qualification apply to all provisions contained in the chapter relating to frauds and perjuries, and does not limit it to contracts involving an interest in real estate alone.

The general rule relating to this subject as applied in the western states is stated by Mr. Kinney in his work on irrigation to be: "As is the case with the acquisition of rights of way and other interest in land, rights to the use of water, or water rights, may be acquired without a formal deed of conveyance. One of the exceptions mentioned to the general rule in a previous section is by a parol contract, for a good consideration, all or a portion of which contract has been executed, and of such a character that a court of equity will enforce a specific performance. An agreement of this nature takes the case out of the statute of frauds and is valid as against the original grantor and as against all parties having notice thereof. It was also held in a recent Oregon case that a parol sale of land and appurtenant water rights for a consideration and a surrender of possession thereof to the purchaser, created an equitable estate in the water rights which a court of equity was bound to protect. Therefore, the grantor cannot revoke such a contract after the grantee or licensee has expended money in making valuable improvements upon the strength of the contract, in order to conduct the water to the place of use. So, under this principle it is held that a parol agreement between parties who have settled upon lands near a certain stream as to the amount of water which each may take from the stream, if acted upon for a time by the parties, will be enforced in a court of equity. But to successfully rely upon a contract of this nature it is held that it must be made for a consideration, and must either be executed in full or partly executed, and the grantee must be able and willing to fully execute the contract upon his part." Kinney on Irrigation and Water Rights, 2nd Edition, sec. 998. The principle above stated is sustained in *Graybill v. Corlett,* 60 Colo. 551.

It is indeed a generally prevailing state policy in those states dependent upon irrigation largely for successful agriculture, both in the interest of economy and to prevent any unnecessary waste of land in the construction and use of ditches, that where one ditch can answer the purpose of

more, the right to use the same ditch is granted to others than the owners.

This principle was enacted into our general irrigation act of 1881, and the reason for it is well stated by Mr. Justice Hayt in *Downing v. More,* 12 Colo. 316, in the following language: "So long as the state remained but sparsely settled, and mining and stock raising were the chief industries, no particular hardship resulted from such a law; but with the increase of settlement, the growth of the agricultural interests and the rise in the value of farming lands, a change in the law became imperative, and in obedience to this demand the statute of 1881 was passed. It will be noticed that in the *first* section of the act provision is made against burdening improved or occupied lands with two or more ditches for the purpose of conveying water through such lands without the owner's consent; while by section *two,* the route to be selected through said lands is designated.   The *third* section is to give effect to the first and second sections by prohibiting a party who has constructed a ditch to convey water through such lands to lands adjoining or beyond, from preventing other parties from enlarging and using such ditch when necessary for the purpose of conveying water through the same lands."

While the ditch there involved, by reason of its private character, was held not to be within the statute, yet it is not contended that the defendant's ditch is of that character, and it must be therefore held to be within the provisions of the statute.

Here, as was said in the Graybill case, the verbal contract and the acts and conduct of the parties under it constituted an irrevocable license.

Some objection is made under a claim that the ditch must be enlarged in order to carry out the agreement.   That may be so as time advances, but it was not discussed or considered in the making of the agreement, and, besides, others supplied by defendant's ditch were assured that the ditch would carry the plaintiff's water without interfering with such rights.

But the fact remains that the ditch did carry plaintiff's water for one irrigation season and so far as appears here, did so carry it without inconvenience or complaint, either from the defendant or from others whom it served.

The judgment is reversed and the cause remanded.

*Reversed.*

Garrigues, C. J., and Denison, J., concur.