Morgan, J.
Appeal from a judgment sustaining a demurrer to the complaint, filed February 21, 1910, for a specific performance of an oral agreement, and damages for nonperformance, and on the plaintiff’s election to stand on its complaint, dismissing the suit.
The contract was in substance:
“That the party of the first part, The Riverside Land & Irrigation Company, agrees to and with the party of the second-part, R. H. Sawyer, that for and in consideration of the covenants and agreements hereinafter to be kept and performed, to transfer to the said party of the second part an option, then held by the said party of the first part from John Ternahan, on land, reservoir sites and water rights known as the John Ternahan ranch, together with the reservoir sites, ditch rights and water rights pertaining thereto, which said ranch is described as the John Ternahan ranch.’'’ [Here follows complete description of ranch] “together with all ditch and reservoir rights which have been used in connection with the aforesaid lands.
“The sáid party of the first part further agrees to *444 enter into an agreement to provide an adequate water supply for the land immediately, using the water now going with the land and such additions thereto as may be necessary to irrigate all of the land above described which the said party of the second part or his assigns may cultivate.
“The said party of the second part in consideration of the agreement above set out to be done and performed by the said party of the first part, agreed to and with the said party of the first part.
“1. To transfer or enter into an agreement to transfer to the said party of the first part, or to whomsoever it might direct, all the reservoir sites, water and ditch rights and stock pertaining thereto, immediately upon transfer of the same to him by John Ternahan.
“2. The said party of the second part further agrees to put .the entire tillable portion of the said tract of land into an irrigation district hereafter to be organized, for the purpose of buying water from the system of the party of the first part as soon as such district is organized.
“3. The said party of the first part further agrees to and with the said party of the second part that upon the forming of the irrigation district that it would transfer to the said party of the second* part bonds of such district representing the acreage placed in the irrigation district by the said party of the second part or his assigns; and that the said party of the first part further agreed to enter into an agreement to furnish to the said party of the second part sufficient water to water all of the above described land that was or should be in cultivation at any time prior to the time when the water cohld be furnished for the irrigation of said land under the irrigation district above referred to.”
The complaint further states that plaintiff transferred the option to defendant Sawyer and he bought *445 the ranch, together with the ditch and reservoir rights; that Sawyer thereafter refused to convey the ditch and reservoir rights to plaintiff; that Sawyer, through a conspiracy with the other defendants to defraud plaintiff of the ditch and reservoir rights, sold and conveyed different undivided interests in the ranch and ditch and reservoir rights to the other defendants; that plaintiff performed all the conditions that it could perform, and was ready to perform all the other conditions of the contract, when the defendant Sawyer conveyed to it the ditch and reservoir rights, or entered into a contract to do so; that the plaintiff was damaged in the sum of $10,000 by reason of defendant Sawyer’s non-compliance with the contract. The prayer is for a decree setting aside the deeds, and a specific performance of the contract as to the conveyance of the water and reservoir rights, or an agreement to do so, and for damages.
A careful examination of the record and the briefs of counsel leads to the conclusion that there are only two questions to be determined: First, Did the complaint state a cause of action for specific performance of that part of the contract upon which a performance is demanded? Second, If the complaint did not state such a cause of action, could it stand as a complaint for damages ?
1. The contract upon which the suit is brought is an oral contract, and while there are many things in it that could be made certain which now seem to be too uncertain to admit of a specific performance, nevertheless, the contract is so indivisible and the material terms thereof are so'interdependent that it would be beyond the power of a court to make or enforce a decree for a specific performance of that part of it upon which a specific performance is demanded by the plaintiff.
It seems to be a well settled rule with reference to suits for specific performance that the contract should *446 not only contain all the material terms necessary to make a complete and legal contract, hut that each one of the terms should be expressed in a sufficiently exact and definite manner that a court may, with reasonable certainty, enforce the specific performance of it. Pomeroy, in his work on Specific Performance, sec. 159, says:
“An uncertain contract, therefore, may perhaps embrace, in a partial manner, all the material terms, but on account of the inexact, indefinite, or obscure language in which one or more of them is stated, it fails to express the intent of the parties with sufficient clearness to enable the court of equity to enforce its provisions. The specific performance of an agreement, thus uncertain, will not be decreed. No criterion can be formulated which shall be a test of certainty in every instance. As a general proposition, although it is perhaps too vague to be of much practical use, the terms of a contract must be expressed with a reasonable certainty, and what is reasonable in any case must depend upon the subject-matter of the agreement, the purpose for which is was entered into, the situation and relations of the parties, and the circumstances under which it was made. A greater amount or degree of certainty is required in the terms of an agreement, which is to be specifically executed in equity, than is necessary in a contract which is to be the basis of an action at law for damages. An action at law is founded upon the mere non-performance by the defendant, and this negative conclusion can often be established without determining all the terms of the agreement with exactness. The suit in equity is wholly an affirmative proceeding. The mere fact of non-performance is not enough; its object is to procure a performance by the defendant, and this demands a clear, definite and precise understanding of all the terms; they must be exactly ascertained before their performance can be enforced.”
In 36 Cyc. the principle is announced on page 543, and on page 587 it is further stated that:
*447 ‘ ‘ The contract must be complete in all its parts; that is to say, it mnst contain all the material terms, and none of these terms must be left to be settled by future negotiations. It must also be certain; that is to say, each of the material terms must be expressed with sufficient clearness and definiteness to enable the court to ascertain the intent of the parties and to frame its decree in accordance with such intent. The court cannot malee a contract for the parties ex aequo et bono. These two requirements of completeness and certainty, while logically distinct, may conveniently be treated together.
“An action at law for breach of .contract can often be maintained, although some of the terms of the contract are not established with exactness. It is otherwise where specific performance is required. The court, in order that it may frame a decree in accordance with the intent of the parties, must be clearly apprised of that intent in all essential respects. A greater degree of certainty is required than in actions at law for damages. The terms must not be ambiguous, so that either party may reasonably misunderstand them, or so obscure or self-contradictory that the court cannot interpret them.”
It naturally appears to the • legal mind, also that specific performance of a contract should be enforced on the contract as an entirety, if possible, and if not possible, then, specific performance of a part thereof should not leave anything that depends upon that which is specifically enforced, or vice versa.
On page 572, 36 Cyc., it is said that “a contract to be specifically enforceable, must be such as can be enforced in its entirety; a partial enforcement by piecemeal not sufficing. ’ ’ This statement of the law, however, is general in its character, and is modified by the special exceptions thereto, that a contract may be enforced specifically as to a part of it where it can be done with equity and justice to all the parties thereto.
*448 This contract sued upon is more in the nature of a preliminary statement of what the parties intended to do, rather than a specific contract to do any particular thing. The plaintiff contends that it may be specifically performed, to the extent that the court could enter a decree requiring the defendant to transfer to the plaintiff the water rights and reservoir sites, or enter into a contract so to do; and requiring the plaintiff to thereafter “enter into an agreement to provide an adequate water supply for the land, immediately, using the water now going with the land, and such additions thereto as may be necessary to irrigate all of the land above described which the said party of the second part (defendant) or his assigns may cultivate. ’ ’
The court, in rendering a decree enforcing this part of the contract, would encounter obstacles wholly insurmountable, and such as the court would be powerless to enforce. The plaintiff and the defendant might never agree as to what an “adequate water supply” is; they might never agree as to what would be required as to “such additions thereto as may be necessary to irrigate all of the land.” They might never agree upon the amount of the land which the defendant ‘ ‘ or his assigns may cultivate.” The defendant might demand that all the land be irrigated upon which the water had been applied, prior to that time, for a beneficial use, or he might demand that an adequate water supply be furnished for all land which he “may cultivate” thereafter, included, of course, in the description of his land described in the contract. If these disagreements arose in reference to this contract to furnish an adequate water supply, the court would be powerless to force .the parties to enter into a contract upon the terms of which they could not agree. Furthermore, there is nothing in the contract, as set forth in the complaint, to show for what length of time this adequate water supply was to be *449 furnished, nor what was to be paid for it; the parties might disagree in regard to these matters, and never be able to enter into a contract of this character. It may be presumed that the plaintiff intended the contract to specify that it would furnish an adequate water supply until the irrigation district was organized, and it may be that the plaintiff intended to furnish this adequate water supply without charge up to that time; but neither of these presumptions is conclusive, as the contract is silent thereupon.
Now, as to the indivisibility of the contract; the enforcement of the part demanded necessarily depends upon the organization of the irrigation district, and the amount of bonds to be issued to the defendant after such organization. If the irrigation district were never thereafter organized, the parties would be left, under an enforcement of the first part of the contract, wholly without any contract for the future as to the furnishing of water; the defendant would own the land; the plaintiff would own the water rights and reservoir sites, with no contract between them as to how and upon what terms the water would be furnished. The land would be worthless without the water, possibly, to the defenant, but the water rights and reservoir sites might be very valuable-to the plaintiff. Furthermore, the defendant might demand a greater number of bonds if the irrigation district were organized thereafter than the plaintiff would be willing to issue to him, and if a disagreement arose on that account and no contract was entered into in reference to it, the parties would again be left with one of them owning the water rights and the other owning the land. Other lawsuits would necessarily follow, and no court would be expected to constantly supervise future contracts between the parties and require them to make such contracts as would satisfy the conditions, because this would be beyond the functions of any court. A careful *450 reading of the contract, with the purposes of the parties in view, will disclose many other obstacles in the way of a specific performance of any part thereof, as well as impassable barriers to a specific performance of the contract as an entirety.
The authorities all are to the effect that the courts are slow to enforce the specific performance of contracts where an action at law may be maintained for damages thereupon. Although this contract comes within the scope of that class of contracts that permits a specific performance to be decreed thereupon, nevertheless, on account of the great uncertainty thereof, specific performance ought not to be decreed in this instance.
2. An examination of the authorities, and especially the discussion by Mr. Pomeroy in his work on Specific Performance, justifies the conclusion that a court of equity may proceed with the case, as an action for damages, although it may conclude that the complaint does not state facts permitting specific performance. Tie specifically distinguishes between compensation and damages, and although he says, this relief of damages, under the ancient system, is only given in exceptional cases, and purely as ancillary to the equitable remedy when the court Tías already obtained jurisdiction of the case by virtue of its equitable powers and determines to do full justice to the party in one cause, instead of compelling him to commence a separate litigation in a court of law; he thereafter concludes that, by the reformed procedure, all old grounds and reasons, upon which under the ancient system the rule was based which forbids the award of damages in equity suits, have been expressly and intentionally removed. — Pomeroy on Specific Performance, sec. 480.
Mr. Waterman, in his work on Specific Performance of Contracts, says, sec. 516:
<£In New York, under the existing practice by which *451 the 'former distinction between legal and equitable actions has been abolished, and legal and equitable causes of action and remedies made capable of being united and administered in one action, the old rule as to knowledge of the plaintiff affecting his right to damages in equity is no longer regarded. When the complainant states facts giving an equitable cause of action, and also a legal cause of action, arising out of the same transaction, the party is entitled to have the latter tried, if necessary to obtain his rights, although he fails to show a right to equitable relief. The claim of damages for breach of contract ‘must be tried by the court or a refere'e, unless some questions of fact involved are ordered by the court to be tried by a jury. Either party has a right to a jury, if the ends of justice require the trial of both; or both may be tried by the court or a referee, if the parties so desire.’ ”
Sternberger v. McGovern, 56 N. Y., 12, 20, 21.
In Pry on Specific Performance, after stating the purpose of Lord Cairns’ Act, and the Judicature Acts, this English author says:
‘ ‘ The plaintiff may now therefore come to the court and say, give me specific performance, and with it give me damages, or in substitution for it give me damages, or if I am not entitled to specific performance give me damages as at common law by reason of the breach of the agreement. ’ ’
Our Code of Civil Procedure is more comprehensive and of broader scope than either of these English acts, and, under its provisions, although specific performance may be denied because the plaintiff has failed to state or prove facts entitling him to such relief, he may in the same suit, in addition to, or in substitution for, relief in equity, recover damages for a breach of the contract. It is contended that the complaint does not state a cause of action for damages under the decision in the case of *452 Winter v. Goebner, 2 Colo. App., 262, 30 Pac., 51, affirmed in 21 Colo., 279, 40 Pac., 570, and that the judgment should, therefore, be affirmed in toto; and that an action in equity should not be changed, 'by amendment, into an action at law.
Decided July 14, A. D. 1913.
Rehearing denied September 15, A. D. 1913.
The complaint in this case is sufficient as it stands for the court to proceed to try the issues as to the damages ; there is a consideration here, while the court stated in the Winter v. Goebner case that the contract was without consideration, and it could not be so easily determined what the damáges consisted of in that case as in this. The plaintiff may desire, however, to amend the complaint so as to more specifically state its claim for damages, or the defendant may require the same as provided in sec. 66, Eev. Code, 1908; Mills’ Ann. Code, sec. 60. Such amendment need not change the suit into an action at law. The present tendency of the bench and bar and of legislative authority is toward further simplicity and liberality in procedure, with the purpose to enforce a full, complete and speedy determination of all the issues between litigants in one action, suit or proceeding.
For these reasons, ¿the judgment is reversed and the cause remanded for further proceedings in accordance with this opinion, with permission to amend the complaint as to damages.

Reversed and Remanded.