## No. 10,770.

## HOEHNE DITCH CO. v. JOHN FLOOD DITCH CO.

Decided February 2, 1925.

Action for damages for breach of contract. Judgment of dismissal.

## *Reversed.*

1. ACTIONS—*Pleading—Change from Equitable to Legal.* Where one brings an action for specific performance of a contract, he is not barred from amending his complaint, upon good cause shown, and upon such terms as the court may prescribe, by asking damages for a breach of the contract in lieu of the specific equitable relief first demanded.

2. CONTRACT—*Breach—Rights of Injured Party.* Where a ditch company refused to comply with the terms of its contract to carry water for another, it is held, under the facts disclosed, that the injured party had a right to construct a new ditch, change the point of diversion, and bring an action for damages for breach of the contract.

3. ACTIONS—*Change from Equitable to Legal.* Allegations of plaintiff in pleadings in another action, held not to be a bar to its right to change an action for specific performance to one for damages, nor to prevent the granting of appropriate compensatory damages in the case under consideration.

4. CONTRACT—*Breach—Damages.* Where a ditch company breached its contract to carry water for another, and the latter brought

suit for damages, the fact that another company offered to carry plaintiff's water free of charge for a limited time, would not be a bar to recovery.

5.    *Breach—Damages.*  In a suit for breach of contract, the breach being established, plaintiff was entitled at least to nominal damages, and the court was not justified in dismissing the action.

6.    APPEAL AND ERROR—*Findings and Judgment on Review.*  The reviewing court, having reversed the judgment, declines to make findings and enter judgment on the record before it.

7.    DAMAGES—*Breach of Contract—Reducing Damage.*  Where a defendant has breached a contract, it is the duty of the injured party to take such reasonable steps as are within his power to reduce or avoid the damages as a reasonably prudent man would take in like circumstances.

8.    *Breach of Contract—Measure of Damages.*  In an action for damages for breach of contract to carry water, the measure of damages is the reasonable cost and expense to plaintiff of procuring a substitute for what it had the right to use under the alleged broken contract.

9.    *Breach of Contract—Measure of Damages.*  Where one has been injured by another, it is the duty of the injured person to use reasonable means to avoid loss and damage, and the expense of such reasonable means is the measure of damage.

10.    *Aggravation and Mitigation—Burden.*  In an action for damages for breach of contract, the burden is on defendant to establish that the injuries claimed by plaintiff were aggravated, if he so alleges, and mitigation of damages is a defense upon which he has the burden of proof.

*Error to the District Court of Las Animas County, Hon. George H. Bradfield, Judge.*

Messrs. NORTHCUTT & NORTHCUTT, for plaintiff in error.

Mr. HORACE N. HAWKINS, for defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS case has once before been in this court.   In the opinion on the first review, 68 Colo. 531, is a statement of

the facts in that record and of the law applicable thereto. On the case as then made, we held that the verbal contract by the owner of an irrigating ditch under which it agreed to carry therein the waters of another appropriator, for a period of ninety-nine years for a specified consideration, is not within the statute of frauds, and further held that it was completely performed by both parties during the first irrigating season, and, therefore, if the statute of frauds did apply, the case was taken out of the statute by performance. The object of the suit when filed, and until after reversal here was directed, was performance of this contract. After the cause was remanded the plaintiff company by a supplemental complaint set forth a state of facts purporting to show upon at least three grounds, that specific performance of the contract was then impossible; because the defendant company had disabled itself to perform after suit begun, or that performance was of no further value to the plaintiff and not then desired, or, if it could then be performed by the defendant, the plaintiff having treated the wrongful refusal of the defendant further to carry as a renunciation of its obligation to do so, thereupon, as was its right, had built for itself an entirely new ditch and, through a court proceeding, had secured permission to change the point of diversion of its appropriation theretofore enjoyed through the defendant's ditch and the right thereafter to utilize the same through the newly constructed ditch. Plaintiff, therefore, asked for an order of court granting it leave to abandon or relinquish its previously asserted demand for specific performance and to seek damages in lieu thereof. Over the objection of the defendant the supplemental complaint was filed and the court proceeded upon the issues joined by the defendant's answer to a hearing upon the question of damages, with the result that the court sustained the defendant's demurrer to the evidence and dismissed the action, to which judgment this writ of error has been sued out.

1. The first question for decision is as to the propriety

of the order allowing plaintiff to change from specific performance to damages for breach of a contract.   Before the passage of Lord Cairn's Act and of the Judicature Acts of the British Parliament, an English court of equity did not award damages in substitution for specific performance where, for a reason subsequent to the beginning of the suit, specific performance could not be awarded.   On the contrary, the court dismissed the equity suit and remitted plaintiff to his law action for damages.   After the passage of these acts it seems that courts of equity in England established the rule applied by the trial court in this case, and which is generally enforced by the courts of the States of the Union, in which the reformed code of procedure has been adopted.   In *Weddingfeld v. Gregersen*, 73 Colo. 582, 216 Pac. 1053, we held that where the plaintiff brought an action for specific performance of a contract, he was not barred from amending his complaint, upon good cause shown, by asking damages for a breach of the contract in lieu of the specific equitable relief first demanded.   In that, as in this case, there had been a previous hearing in the Supreme Court and the relief sought upon the first trial was specific performance.   After the reversal and after the remittitur was sent down, the plaintiff, by leave of court, filed an amended complaint containing substantially the same facts pleaded in the original complaint but instead of seeking performance prayed for damages for breach of the contract.   The opinion says that the remedy of specific performance of a contract is not inconsistent with the remedy for damages for its breach.   Both remedies being based upon the affirmance of the contract, it was said, that in a proper case, a plaintiff may so amend as to change his action from specific performance to damages.

Counsel for the defendant cites *Hipgrave v. Case,* 28 Law Rep. Chancery Div. 356, in support of his contention that under the English statutes referred to, such an amendment as was made here is not allowable.   We think learned counsel is not correct in his deduction from that

decision. The court there held that the plaintiff, not having at the hearing below, asked leave to file an amendment to the complaint showing ground for a change from specific performance to damages, as the Practice Act required, will not be permitted at a later stage in the proceedings to file such an amendment. But if the English decision was as claimed for it, we could not hold improper the order of the court in this case which granted plaintiff permission to proceed as for damages, unless we declined to follow the Weddingfeld Case, supra, and other decisions of this Court. The rule therein announced prevails generally in the so-called reformed procedure codes, though the Wisconsin rule is not so liberal. *Riverside L. & I. Co. v. Sawyer*, 24 Colo. App. 442, 450, *et seq.*, 134 Pac. 1011; *Petri v. Doughty*, 75 Colo. 551, 227 Pac. 388; 21 C. J. p. 134, *et seq.*, § 117; *Rohrbach v. Hammill*, 162 Iowa, 131, 143 N. W. 872.

If not the same, as, the rule is analogous to, that general equitable doctrine, that a court of equity, having acquired jurisdiction for one purpose, retains it for all purposes.

2. Defendant further contends, however, that if, in a proper case, such a change is permissible, this is not that kind of a case, because the uncontradicted facts are that after the defendant refused to carry the plaintiff's water in defendant's ditch, the plaintiff, treating this refusal as a renunciation by the defendant of its obligation under the contract, proceeded to construct a new ditch for carrying its own appropriation. Plaintiff constructed a headgate in the stream from which the supply of water was taken and therefrom built a ditch over lands, some of which it acquired by condemnation, some by purchase, and, in connection therewith, secured permission of the court as required by the statutes of this state in such circumstances, to change from the old point of diversion to the headgate of the newly constructed ditch and thereby and continuously from the date of completion has carried its own water through this artificial channel. Thereby the plain-

tiff's water, even if the defendant was willing to perform the contract, could not be legally carried through the defendant's ditch, for the statute, having granted the plaintiff permission to change the point of diversion, would not permit it thereafter to abandon the new, and return to the use of the former, headgate. In other words, it is said that the plaintiff's own wrongful act rendered specific performance of the contract legally impossible. This was the view taken by the trial court. We think the trial court was in error. It is doubtless true that the conduct of a plaintiff might be so flagrantly unjust, or so tainted with fraud, or so palpably conceived for the purpose of bettering its own condition at the expense of the defendant that a court of equity would not permit a party, guilty of such action, to abandon a remedy, which at first he had sought, and pursue another that was more appropriate. We are not prepared to say upon this record as it now reads that the plaintiff, as a matter of law as applied thereto, did not have a legal right to construct a new ditch and change the point of diversion after the defendant had refused to carry the plaintiff's appropriation as by contract it had agreed to do. We do not say that the plaintiff may recover the entire costs and expenses of construction thereof, but we do say that it was a plan that plaintiff might adopt. Whether it was a reasonable step to take is a matter of fact to be determined upon the entire evidence produced upon that issue at another trial. Besides, this averment in plaintiff's petition for leave to change to damages is only one of the grounds referred to, and the others relied upon, themselves justify the permissive order.

3. But defendant also calls our attention to the fact that in the plaintiff's petition in the district court for permission to change the point of diversion, it said that the proposed change "will enable your petitioners to make a more advantageous and economical use of their said priorities than if diverted through said John Flood Ditch." This might be a circumstance, and we think it would be on the issue of the amount of damages, if any, that plain-

tiff might recover, but it does not constitute a bar to its right to change from specific performance to damages, neither does it prevent the granting of appropriate compensatory relief.

Another objection of the defendant is that the Model Ditch Company made an offer to the plaintiff to carry free of charge its appropriation during the pendency of the litigation. This promise might be nudum pactum, but in any event it was limited in duration and while it might, and we think it would, be important on the issue of the amount of damages, it would not be a complete bar to recovery.

. Other objections are urged with much force and plausibility by defendant's counsel which we do not consider separately, but we think their decision either way would not materially affect our conclusion. However, our views will be sufficiently expressed thereon in our subsequent discussion.

4. We have already said that the court was not in error in permitting the plaintiff to abandon specific performance and rely on damages. The right to make this change, however, in every case, we apprehend, is not an absolute or unqualified right. If a plaintiff was guilty of fraud, or was endeavoring to over-reach the defendant, a court would not be likely to permit the change of remedies. Courts may grant the permission on terms which hereinafter are prescribed by us in this case. The trial court, having found as it did that the contract pleaded was established by the evidence, and that defendant wrongfully broke it, this was the equivalent of a finding that the defendant had breached its contract of carriage. We should not be too tender in our consideration of a wrongdoer in such cases, or relieve it altogether from its liability for a breach of contract. Even if the plaintiff's proof failed to establish substantial damage, the defendant's breach of its contract of itself entitled the plaintiff at least to nominal damages. Upon no theory was the court justified in withholding all damage and dismissing the ac-

tion at the plaintiff's costs.   Upon the court's own theory
of the case plaintiff, on the contrary, was entitled to a find-
ing and judgment for nominal damages that carried with
it costs.   In view of our conclusion that the judgment can-
not stand and must be reversed, it will be of some aid to
the trial court and to the parties, for us to outline our
views of the law.

We have reached the conclusion that, in the event of a
new trial, all the issues of fact should be retried.   This
conclusion is based in part upon the contention of the
defendant that the oral contract has not been at either of
these trials established by that clear and convincing evi-
dence which is necessary in such cases.   To avoid misap-
prehension we say that our attention has not been called
to cross-error assigned by the defendant to the findings
of the court that this contract was established.   It would
be improper, therefore, for us, even were we so inclined,
to pass upon something that is not before us.   Doubtless
the district court at the second trial was somewhat em-
barrassed, as we are now, by our own previous decision
that upon the facts then before the court the contract was
clearly established.   Even though upon the second trial
the district court reached the same conclusion, we think
that in the interests of justice all the controverted issues
of fact should be retried.   It will not materially enhance
the cost of the trial or add to the labor of counsel to try
all the issues of fact at the same time.   We also direct, as
a condition of the exercise of the permission to change
from specific performance to damages that, upon the re-
quest of either party, the court shall call a jury to try all
the issues, and the verdict and finding of the jury shall
have the same force and effect as in an ordinary action at
law.   In this connection we notice plaintiff's request that
this court make its own findings from the evidence in this
record and itself determine the amount of the plaintiff's
damage.   We decline to enter upon such an inquiry.   There
are many different items of damage in plaintiff's bill of
particulars.   We do not propose to study this voluminous

record for the purpose of determining for ourselves what the evidence establishes. When the trial court sustained the defendant's demurrer to the evidence on the ground that no legal damage had been established, this rendered it unnecessary for the defendant to produce any evidence of its own tending to controvert or overcome the evidence of the plaintiff. Now that we have held that the trial court should not have dismissed the action, but should have determined the issues upon the plaintiff's evidence and upon such evidence as the defendant had to offer, it would be manifestly unjust to the defendant and contrary to good practice for this court upon this review to award to the plaintiff damages without giving an opportunity to the defendant to present its evidence. It is, however, in accordance with good practice for this court, as a guide for the trial court and the parties in the event of a new trial, upon the remanding of the cause which will be ordered, to outline in general terms its view as to the measure of damages to be applied by the trial court. In doing so, however, the suggestion should be made that a new trial may elicit facts which call for instructions to the jury and rulings by the trial court in addition to what are hereinafter outlined.

5. Where the defendant has breached a contract it is the duty of the injured party to take such reasonable steps as are within his power to reduce the damages which he has sustained, or to lessen or to avoid them as a reasonably prudent man would take in like circumstances. As applied to the facts now before us, we observe that it is not necessarily the cost and expense of building an entirely new ditch, the acquiring of lands for right of way, and the costs and expenses of the litigation to secure the right to change the point of diversion, that constitute the true measure of damages. It may be, and some cases have held, that such costs and expenses as the plaintiff has incurred are some evidence, or prima facie evidence, of the amount thereof. The true measure of damage, however, is the reasonable cost and expense to the plaintiff of procuring

a substitute for what it had the right to use under the alleged broken contract. It was error, however, for the trial court to dismiss the action because of insufficiency of the evidence. If, as is claimed, the plaintiff had the opportunity to secure, and might have secured, the right of carriage through some other ditch at a less expense and costs than was incurred in the building of its new ditch, or by condemnation or otherwise could have secured the right of carriage through some existing ditch at a less expense, the reasonable necessary expense thereof would be the limit of recovery in the absence of any evidence of a wilful or malicious wrong. The true rule seems to be that where one has been injured by another, it is the duty of the injured person to use reasonable means to avoid loss and damage and the cost and expense of such reasonable means would be the true measure. Sedgwick on Damages (9th Ed.), Vol. 1, p. 437, et seq., contains, we think, a true statement of the general rule applicable to this case. At page 440 the author says that reasonable means, as well as reasonable cost, furnish the true test; that is to say, the plaintiff must take and use reasonable means for avoiding the loss and it is only the reasonable cost of such reasonable means that may be recovered. Where a plaintiff desires to recover the expense of an attempt to avoid a loss, in such circumstances, it is prima facie sufficient for him ordinarily to establish the fact of payment and then the burden of introducing the evidence that the means employed, and the expense thereof, were unnecessary or unreasonable is on the defendant. If the plaintiff fails to take the proper steps to avoid consequences or loss, he cannot recover the entire expense of the improper steps taken, if any, but only the cost and expense of the proper and reasonable steps which he should have taken. The authorities generally say that the burden of proof is on a defendant to prove that the injuries claimed by the plaintiff were aggravated, and that mitigation of damages is a defense to be established by the defendant. 5 Encyc. Plead. & Prac. p. 773; 8 R. C. L. §§ 14 and 15, pp. 443, 444,

445; *Waco Art. Water Co. v. Cauble,* 19 Tex. Civ. App. 417, 47 S. W. 538.

We think we should not more specifically state the measure of damage for reasons already stated. With the contentions of the defendant, as to the proper measure of damage, we are in the main, in accord, as already indicated, but it is not wise or good practice to restrict the trial court too closely, where, as is indicated by the arguments of counsel in this case, in view of a new trial, the defendant may produce evidence not in the present record which might call for some variation of, or the enforcement of rules covering exceptions to, rules applicable to a different state of facts found in this record.

The judgment of the trial court must be reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed. The evidence already taken in former trials may be used by the parties, and either party may produce other and additional evidence.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE SHEAFOR concur.