470 P.2d 61 (1970)
David L. HOLLAND, and Harry U. Edgar, d/b/a Pleasure Pool Company, and Home Indemnity Company, Plaintiffs in Error,
v.
GREEN MOUNTAIN SWIM CLUB, INC., Defendant in Error.
No. 70-011. (Supreme Court No. 22406.)
Colorado Court of Appeals, Div. I.
January 27, 1970.
Rehearing Denied February 19, 1970.
*62 L. James Arthur, Denver, for plaintiffs in error David L. Holland and Harry U. Edgar.
Weller, Friedrich & Hickisch, by John R. Hickisch, Denver, for plaintiff in error Home Indemnity Co.
McVicker, Woodford & Myers, by Frederick J. Myers, Wheatridge, for defendant in error.
Not Selected for Official Publication.
COYTE, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
In April 1963, plaintiffs in error, David L. Holland and Harry U. Edgar, doing business as Pleasure Pool Co., hereinafter referred to as defendants, contracted to build a pool for defendant in error, plaintiff below, Green Mountain Swim Club, Inc., hereinafter referred to as plaintiff. Home Indemnity Co., plaintiff in error and defendant below, hereinafter referred to by name, was a surety guaranteeing performance by Pleasure Pool Co., including Pleasure Pool's warranty that the pool would be free from defects in workmanship and material for one year. In mid-July, 1963, the pool was completed and turned over to plaintiff. By the first week of August, plaintiff noticed cracks developing in the deep end of the pool. Notice of this fact was given to the defendants and request made that they remedy the defects. Defendants refused to make repairs. In September, 1963, the pool was drained and repairs commenced by plaintiff. This action was commenced by the plaintiff to recover the costs of those repairs on the grounds that the defendant had negligently constructed the pool and that the pool developed defects in workmanship and material within the warranty period.
The trial was to the court which found for plaintiff on the ground that the defendants had negligently constructed the pool and this negligence was the proximate cause of plaintiff's damage. The court reduced the cost of repair by $2,083.40, as being excessive. Both parties have appealed this decision.
Defendants urge reversal on three grounds of alleged error. First, defendants urge that the evidence produced at trial would not support the trial court's finding of negligence. Rather, the defendants insist that the evidence more properly supports its theory that an outside force, beyond the control of defendants, was the cause of plaintiff's damages. Next the defendants urge that even if negligent, the plaintiff should be denied recovery for having breached its duty to mitigate the damage. Finally, the defendants assert that the trial court erred in its assessment of the damages because the evidence produced would not support the finding that the repairs made were either reasonable or necessary.
Plaintiff has alleged cross-error on the ground that the trial court erred in finding the costs of replastering the pool to be excessive.
The contentions of both parties will be discussed in turn.

I.
The defendants' first contention is that the trial court's finding of negligence is unsupported by the evidence. We do not agree.
If the evidence produced at the trial is of sufficient weight to justify the findings made by the court, then such findings will not be disturbed on review even if reasonable men might have reached different conclusions based on that same evidence. Whatley v. Wood, 157 Colo. 552, 404 P.2d 537.
In reviewing the record in this case, it is apparent that it is primarily one of conflicting theories of cause. Neither side seriously disputes the fact that the pool was *63 damaged; that the damage occurred as a result of the dropping of the deep-end; and that this dropping resulted from water washing away the supporting material underneath. What is in dispute is the source of this water.
Paragraph 6 of the contract between the parties states that in the event defendants encounter any subsurface water which requires additional work, they shall notify the plaintiff, in writing, of that fact and work out any changes necessary. Plaintiff never received written notification from defendants that there was subsurface water, yet defendants assert that subsurface water caused the underlying material to be washed away, thereby relieving them of liability.
It is the plaintiff's theory of the case that the waterstop, a rubber seal in the expansion joint designed to render the pool watertight, was improperly set in the concrete, thus allowing water to seep through the joint and wash away the supporting material.
The trial court found that the damage to the pool was caused in accordance with plaintiff's theory of the case.
Plaintiff produced ample evidence in the form of testimony by experts that in their opinion, based upon tests made as well as physical examinations of the structure, subsurface water was not the cause of the destruction of the underlying support. In their opinion the waterstop was improperly sealed to the concrete thus allowing water to seep through and destroy that support.
Based on this testimony, we hold that the trial court was justified in finding that if the defendant had properly sealed the waterstop to the concrete, no damage to plaintiff's pool would have resulted.

II.
The second major contention of the defendants is that plaintiff breached its duty to mitigate its damages and should recover only nominal damages, if any.
The defendants insist that if the plaintiff had drained the pool in August upon first noticing the cracks, then the damage that did occur would have been greatly minimized.
The general rule is that in an action for breach of contract the injured party, upon discovery of the breach, is bound to exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage. Brenaman v. Willis, 136 Colo. 53, 314 P.2d 691; Hoehne Ditch Co. v. John Flood Ditch Co., 76 Colo. 500, 233 P. 167. We find nothing in the record to indicate that plaintiff failed to follow this general rule.
Defendants assert that they recommended to plaintiff that the pool be drained when the cracks appeared in August and that plaintiff's failure to do so constituted the breach of its duty to mitigate the damages. It should be noted that defendants at this point denied any responsibility for the damage. It is not necessary that the damage actually be mitigated in order for the plaintiff to conform to this rule, but merely that it take reasonable measures to alleviate the damages. It was the unrebutted testimony of the plaintiff that after notifying the defendants of the cracks in the pool it made two attempts to seal the leak by caulking the joint. We cannot say as a matter of law that these steps were insufficient to meet the requirement that plaintiff make all reasonable attempts to reduce the total injury.
The failure to mitigate damages, being an affirmative defense, casts the burden on the defendants to prove that the plaintiff breached its duty. Hoehne Ditch Co., supra. It is for the trier of facts to determine whether or not this burden has been sustained and, absent a clear showing of error, such determination will not be upset upon review.

III.
As a final allegation of error, defendants assert that the trial court erred in *64 its assessment of the damages because they were not established as being either reasonable or necessary.
When a party is injured he may make himself whole, by repairing the damage; however, only the reasonable costs of such repairs are recoverable. Valley Development Co. v. Weeks, 147 Colo. 591, 364 P. 2d 730. However, when the fact of damage is established and the plaintiff introduces evidence of payment for repairs, it becomes a rebuttable presumption that such repairs are necessary and reasonable, and the burden of going forward shifts to the defendant in such a case to introduce evidence that such repairs were unnecessary in scope and excessive in cost in order to prevail. Hoehne Ditch Co., supra.
In this case, plaintiff introduced evidence of the necessity for repairs as well as testimony to the effect that the costs were reasonable in comparison with other similar construction costs in the area. Further testimony was introduced to the effect that the additions to the pool, namely stirrup beam and caissons, were necessary in order to put the pool back in its original condition. We find this sufficient to establish the fact that the repairs were both necessary and reasonable. It became incumbent on the defendants at this point to introduce evidence to rebut this testimony, which they failed to do.

IV.
The plaintiff alleged cross-error and asserts that the cost of replastering the pool, $3,500, was fully supported by the evidence, and that the trial court's deduction of $2,083.40 was error.
As was stated above, once evidence of payment for repairs is introduced, the burden of going forward shifts to the defendant to introduce evidence that the cost was excessive or unreasonable.
The trial court found that $3,500 was excessive. It made this finding based on the testimony that the original cost of plastering was $1,416.60, and allowed this amount for the replastering and deducted $2,080.40 from plaintiff's cost of repairs. The evidence on the replastering was that it was necessary to chip and sandblast the surface before the surface could be plastered.
The trial court erred in using the original cost to plaster the pool as the measure of damages. We find that a distinction exists between the cost of the original work and the remedial work; that is, the nature and type of work necessary to remedy badly damaged plaster is intrinsically different from the type of work necessary to originally plaster the pool. Because the types of work differ so much in scope, it is improper to use one as a basis for determining the proper cost of the other.
The only measure of damages for replastering the pool before the trial court was $3,500. Defendants' only evidence produced on this point was, in essence, that if the pool had been replastered immediately after being drained, the damage to the plaster would have been minimal. Such evidence is only of value if it were possible at the time to replaster the pool immediately upon draining.
Both sides agree that if kept dry for a prolonged period of time, then extensive damage would result to the plaster. The trial court found that the replacement of the expansion joint and addition of the stirrup beam and caissons were necessary. According to the plaintiff's unrebutted testimony, such repairs took 45 days, during which time the pool had to be dry. The pool was replastered immediately after the other repairs were completed. Consequently, the damage to the plaster was an unavoidable consequence of keeping the pool dry for other repairs.
The only evidence as to cost before the court was plaintiff's evidence of $3,500. Defendants' only evidence offered was that minimal damage would have resulted if the plaster had been immediately repaired. However, since the essence of the court's finding was that immediate repair of the plaster was impossible by virtue of the fact that other repairs necessitated the pool *65 being kept dry, defendants' evidence does not go to rebut the plaintiff's evidence that extensive damage to the plaster cost $3,500 to repair.
We conclude, therefore, that the evidence in this case does not support the trial court's deduction of $2,083.40 from the cost of repairs.
We therefore remand with directions that the judgment in favor of plaintiff be increased by $2,083.40.
SILVERSTEIN, C. J., and PIERCE, J., concur.