**GUNDERSONS, INC., a South Dakota Corporation, Plaintiff-Appellant,**

v.

**James H. TULL, H.D., "Hersch" McGraw, Thomas M. Peck, Joseph Coyte, Albert R. Oesterle, Gerald D. Kraus, Alfred D. Peck, Willard E. Morley, Gordon Adler, Donald W. Mullison, The Parker-Cordova Partnership, Court Square Investment Company, Ptarmigan Investment Company, a Colorado General Partnership and Ptarmigan Investment Company, a Colorado Limited Partnership, Defendants-Appellees.**

No. 82CA1274.

Colorado Court of Appeals,
Div. I.

Nov. 23, 1983.

Rehearing Denied Dec. 15, 1983.

Certiorari Granted March 26, 1984.

Holland & Hart, Wiley E. Mayne, Scott S. Barker, Denver, for plaintiff-appellant.

Fischer & Wilmarth, Steven G. Francis, Fort Collins, for defendants-appellees.

BERMAN, Judge.

In an action alleging breach of contract by defendant, Ptarmigan Investment Company, the plaintiff, Gundersons, Inc., a golf course construction company authorized to do business in the State of Colorado, appeals the trial court's denial of an award for lost profits and other out-of-pocket expenses and mitigation damages. We reverse.

On July 26, 1979, defendant Ptarmigan Investment Company, a partnership, accepted plaintiff's bid to build a golf course for Ptarmigan. Plaintiff began work on the golf course on August 6, 1979. On August 30, 1979, the parties executed a document called "Standard Form of Agreement Between Owner and Contractor." On August 28, 1979, Gun Barrel Mortgage Company agreed to finance the construction of the golf course. However, defendant never obtained the financing necessary to complete the course. The trial court held that the contract between plaintiff and defendant came into existence on August 30, 1979.

Plaintiff continued on-site work on the golf course through November of 1979, when bad weather forced cessation of most of the work. At that time approximately one-third of the work had been completed.

In accord with the terms of the written agreement, plaintiff received monthly payments for its work completed through the end of November 1979, less a 10% retainage withheld by Ptarmigan. Because of Ptarmigan's inability as of March 15, 1980, to pay for the completion of the golf course, plaintiff ceased work.

Thereafter, plaintiff brought this action for breach of contract, seeking the profits it would have made had it been allowed to complete the golf course under the contract. The trial court concluded that Ptarmigan breached the contract and that plaintiff was entitled to damages as shown by the evidence, but that the evidence did "not meet the burden of proof required" to recover lost profits on the two-thirds of the contract remaining unperformed by plaintiff. Accordingly, it awarded no damages

beyond the 10% retainage for the work that had been performed.

## I.

Plaintiff's first argument on appeal is that the trial court erred in failing to award lost profits to plaintiff and in denying the admission of certain evidence documenting plaintiff's lost profits. We hold, based on the testimony in the record, that the trial court erred in failing to award plaintiff lost profits. Therefore, we need not address the issue of the propriety of the trial court's rejection of various other forms of proof of plaintiff's lost profits.

In *Comfort Homes, Inc. v. Peterson,* 37 Colo.App. 516, 549 P.2d 1087 (1976), this court set forth the formula for computing lost profits in an action for breach of a construction contract:

"The amount of ... damages has been described as ... the contract price less (1) any payments made by the owners on the contract, and (2) what it would have cost the builder if it had completed the [project] in accordance with the contract."

In the instant case, the contract price and the amount paid were not in question. The contract price was $1,294,129. At the time of the breach, plaintiff had been paid $391,-544 under the contract.

As to the cost of completion component, plaintiff's exhibit regarding its profitability on the Ptarmigan project as of the date of termination was ruled inadmissible. Nevertheless, the president of plaintiff's corporation was allowed to testify, based on 18 successful years in the golf course construction business, as well as on the actual rate of profit plaintiff made on the Ptarmigan project for the work that was completed up to November 29, 1979, that the cost to complete the Ptarmigan project would have been approximately $600,000. Plaintiff's president further testified that costs on the first half of golf course construction projects are normally higher than costs on the second half because of the mobilization and start-up costs. The correlative of that opinion is that profits on the

second half of golf course construction projects are as high or higher than profits on the first half. When this estimated cost to complete and the payments already received are subtracted from the contract price, as the *Comfort Homes* formula requires, the result is a lost profits figure of $302,585.

 Defendant claims that the cost to complete figure is too uncertain to be the basis of an award for lost profits. Defendant states that the amount of the expected net profit must be shown with *reasonable* certainty and may not be speculative, remote, or imaginary. We agree with this articulation of the standard of proof in a lost profits case, *Lee v. Durango Music,* 144 Colo. 270, 355 P.2d 1083 (1960); *see also Power Equipment Co. v. Fulton,* 32 Colo.App. 430, 513 P.2d 234 (1973), but hold that, as a matter of law, plaintiff has met this burden.

Defendant cites *C. McCormick, Damages* § 165 at 644 (1935) for the proposition that the burden of proof as to the issue of cost of completion cannot be adequately met "by merely placing the builder or his superintendent on the stand to get his lump sum opinion or estimate, [rather] ... the estimate should include detailed figures as to the costs of the different materials and operations ...." Here, the plaintiff did not merely give a lump sum opinion; rather, the plaintiff met the above burden by providing a specific itemization of the cost of doing each task which remained to be done at the time of the breach in order to complete the golf course.

Plaintiff's president broke the project down into various components (e.g., green construction, cart path construction, etc.) and testified as to the separate cost to complete each part, based on the quotes for cost of materials used by plaintiff in preparing its bid on the Ptarmigan project. This testimony projected the cost to complete the contract to be $609,923, leaving a lost profit margin of $292,662 or 34% of the contract price for the remaining work. This figure is fairly consistent not only

with the corporate president's lost profits figure based on profitability on the Ptarmigan project prior to the breach, but also with his testimony that he originally bid the job based on 35% above cost.

"Uncertainty as to the amount of damages is not an obstacle to recovery." *General Insurance Co. of America v. City of Colorado Springs*, 638 P.2d 752 (Colo. 1981). Here, the evidence established, and the trial court held, that there was a contract and that the defendant had breached it. Even if the plaintiff had failed to establish substantial damages, the trial court was not justified in withholding all damages, since the defendant's breach in itself entitled the plaintiff to at least nominal damages. *Comfort Homes, Inc., supra.*

Therefore, the trial court committed reversible error in failing to award plaintiff its lost profits. As a fact finder, it was incumbent upon the trial court to select the cost of completion figure it concluded had been better established by the evidence in order to arrive at the amount of plaintiff's lost profits. A reasonable basis for calculating the damages resulting from the breach was provided by the evidence. *See Comfort Homes, Inc., supra.*

## II.

Plaintiff's final argument is that the trial court erred in failing to grant consequential damages for (1) the retention of plaintiff's superintendent on plaintiff's payroll during the period he would have worked on the Ptarmigan job had the contract not been breached, (2) the maintenance of long term leases on equipment dedicated to the Ptarmigan project and left idle by the breach of contract, and (3) the costs incurred in attempting to mitigate plaintiff's damages by seeking substitute golf course construction contracts. We agree that consequential damages should be granted to plaintiff for the latter two items, but not for the former.

A contractor is entitled to recover from a breaching defendant damages sufficient to place it in the position in which it would have been had the breach not occurred.

*Comfort Homes, Inc., supra.* This measure of damages should include any incidental or consequential loss caused by the breach. *General Insurance Co. of America, supra.* However, as even the plaintiff admits in its brief, the non-breaching party in a contract is under a duty to use reasonable means to avoid loss and damage. *Hoehne Ditch Co. v. John Flood Ditch Co.*, 76 Colo. 500, 233 P. 167 (1925).

### A.

With respect to the salary of plaintiff's superintendent, plaintiff failed to mitigate damages. Here, plaintiff retained the superintendent not because he might be needed on the Ptarmigan golf course job, but "on the assumption that [plaintiff] might require his services on future projects."

Plaintiff does not argue that its company had a long term employment contract with the superintendent or, in short, that there was any legal impediment to laying off the superintendent. Therefore, since the superintendent's salary was an avoidable expense and since plaintiff failed to mitigate its damages by temporarily laying off the superintendent, the plaintiff is not entitled to recover the sum it spent to retain the superintendent on its payroll during the period he would have worked on the golf course had the contract not been breached.

### B.

The second consequential damage for which plaintiff seeks recovery is its costs for maintaining long term leases on equipment dedicated to the Ptarmigan project and left idle by the breach of contract. These lease costs extended from December 1, 1979, through March of 1980.

Defendant argues that plaintiff should not be allowed to recover the money paid for equipment leases for two reasons. First, defendant argues that all of plaintiff's equipment on the Ptarmigan job was leased from Fairway Leasing Company, which is a partnership owned by the Gunderson brothers who are president and vice president of plaintiff corporation. How-

ever, since there is no disregard of corporate formalities on the part of plaintiff corporation and no suggestion by defendant that this court should pierce the corporate veil of plaintiff corporation, the relationship between plaintiff corporation and Fairway Leasing Company has no bearing on plaintiff's ability to recover damages for long term equipment leases.

Defendant's second argument against plaintiff recovering money paid for long term equipment leases is that. Colorado does not allow such recovery. In support of this proposition, defendant cites *Uinta Oil Refining Co., et al., v. Ledford*, 125 Colo. 429, 244 P.2d 881 (1952). In *Uinta*, our Supreme Court held, with regard to a defendant's claim for expenses incurred in conjunction with a contract breached by the plaintiff:

> "When defendant made his investment in trucks, tanks and equipment in order to carry out his contract with plaintiff, he did so at his own risk, knowing that these items would constitute at least a part of his cost of doing business under the agreement."

The court then went on to state that when the trial court allowed defendant to recover damages on account of the "purchase of equipment" it, in effect, erroneously allowed double damages.

The instant case is distinguishable from the facts in *Uinta*, and, therefore, we hold that it was error for the trial court to deny plaintiff consequential damages for long term lease payments on equipment for the Ptarmigan project. In *Uinta*, the defendant purchased the trucks, tanks, and equipment in order to carry out his contract with plaintiff. Thus, when the contract was breached, defendant avoided the cost of depreciation as well as wear and tear on the trucks and equipment. Therefore, it was proper that defendant not be compensated for this cost. Here, however, plaintiff leased the equipment for this particular job on long term leases, and, when the contract was breached, plaintiff did not and could not avoid the lease payments. Hence, in order to place plaintiff in the position in which it would have been had the breach not occurred, *Comfort Homes, Inc., supra*, plaintiff must be awarded consequential damages for the cost of the long term equipment leases.

## C.

Plaintiff's final argument is that it is entitled to recover the amount it reasonably spent to mitigate its losses by bidding on other golf course projects. In *Hoehne Ditch Co. v. John Flood Ditch Co., supra*, our Supreme Court held that:

> "[W]here one has been injured by another, it is the duty of the injured person to use reasonable means to avoid loss and damage and the cost and expense of such reasonable means would be the true measure [of damages]."

Defendant's only argument in opposition to plaintiff's recovery of mitigation costs is that plaintiff did not prove that all of its expenses were "essential" to bid on other golf course projects. However, as the court held in *Hoehne:*

> "Where a plaintiff desires to recover the expense of an attempt to avoid a loss, in such circumstances, it is prima facie sufficient for him ordinarily to establish the fact of payment and then the burden of introducing the evidence that the means employed, and the expense thereof, were unnecessary or unreasonable is on the defendant."

We hold that, here, plaintiff provided such prima facie proof and defendant did not meet his burden of rebuttal under *Hoehne*. Plaintiff is, therefore, entitled to recover its reasonable consequential damages for mitigation costs.

The judgment is reversed and the cause is remanded with directions to the trial court to award damages to plaintiff, based on evidence in the record for lost profits as well as for consequential damages for equipment lease payments and mitigation costs, consistent with this opinion.

PIERCE and METZGER, JJ., concur.