No. 20868.

WILLIAM H. RIGGS, ET AL. *v.* IONE MCMURTRY.
(400 P.2d 916)

Decided April 12, 1965.

GORDON & GORDON, JOHN J. LEFFERDINK, for plaintiffs in error.

HARLAN JOHNSON, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MCWILLIAMS.

BY writ of error the Riggses seek reversal of a judgment of the trial court which decreed that Ione McMurtry was the absolute owner of certain land by her adverse possession of the same for more than eighteen years as prescribed by C.R.S. '53, 118-7-1.

The following chronology will perhaps serve to place the present controversy in proper focus:

1. by warranty deed recorded April 13, 1935, one J. O. McMurtry acquired title to certain described property situate in Prowers County, the property being a *part* of lot 76 in Park subdivision in the town of Holly;

2. in 1935 the McMurtry tract was surveyed and staked out;

3. immediately thereafter J. O. McMurtry constructed a fence along the north and west sides of his property, placing the fence on the north and west boundary lines as such had been determined by the aforementioned survey;

4. these fences thereafter remained in place until March 1962;

5. in 1942 William and Mary Riggs purchased all of lot 76 in Park subdivision in Holly, excepting the tract previously conveyed to J. O. McMurtry;

6. in 1947 J. O. McMurtry died and thereafter his widow, Ione McMurtry, became the fee owner of J. O. McMurtry's interest in lot 76;

7. on March 21, 1962, at a time when Ione McMurtry was away from her home William Riggs, without notice or warning, tore down the aforementioned fence and at the same time proceeded to place a building on land which theretofore had been "within" or "behind" the McMurtry west fence; and

8. on April 25, 1962, Mr. Riggs either tore down or caused to be removed a small building or shed used to store materials, which shed belonged to Ione McMurtry and for many years had been located "within" the fenced area.

What triggered this entire controversy was the fact that a short time prior to March 1962 the Riggses had determined to subdivide their property and in furtherance of this plan caused a survey to be made. This 1962 survey revealed that the McMurtry fences on both the north and west side of her tract were not located on the true boundary line. The accuracy of this 1962 survey, incidentally, is in nowise contested by Ione McMurtry. This particular survey established that the north fence was not on the boundary line, but was actually located on the Riggses' property some four feet *north* of the true boundary line. As to the west fence, the survey disclosed that it too had been placed on the Riggses' property and was located some 21 feet *west* of the true boundary line. Without communicating any of these facts to Ione McMurtry, Mr. Riggs decided to assert his control and dominion over that portion of "his" property which lay within or behind the McMurtry north and

west fence line and he thereupon proceeded to do so in the somewhat abrupt manner described above.

Based on this sequence of events, Ione McMurtry brought an action under Rule 105, R.C.P. Colo., to quiet title to all that land which lay within her aforementioned fence lines, as the same had existed before they were torn down by William Riggs in March 1962. She also sought compensatory damages in the amount of $2,500 from the Riggses for the damage occasioned her by the tearing down of her fence, by the destruction of certain shrubs, trees and a strawberry bed, and by the destruction or removal of her storage shed. Finally, Ione McMurtry alleged that William Riggs' several actions were fraught with malice and insult and with a wanton and reckless disregard of her rights and feelings, for which she sought additional monetary assuagement by way of exemplary damages in the sum of some $2,500.

Trial to the court culminated in a judgment and decree that title to the land here in controversy should be — and was — quieted in Ione McMurtry. The basis for the decree was a determination by the trial court that through adverse possession Ione McMurtry was now the absolute owner of a strip of land some 4 feet wide lying to the immediate north of the tract of land to which she had the record title; and further, that she was similarly the owner of a strip of land some 21 feet wide to the immediate west of her property. In other words, the trial court decreed that Ione McMurtry was now the owner of that land which lay within and behind the north and west fence line of her property. At the same time the trial court awarded Ione McMurtry the sum of $500 as actual damages, with an additional $100 being awarded her as exemplary damages.

By this writ of error the Riggses seek reversal of this judgment. It is their basic contention that inasmuch as the placing of the north and west fences was the result of a "mistake," in the sense that the same were not constructed and placed on the *true* boundary lines, such

therefore could not form the basis for any claim of ownership based on adverse possession of land to which they (the Riggses) are the record owners thereof. From the record it clearly appears that the McMurtrys and the Riggses, and the Riggses' predecessors in title, all believed that the north and west fences were in fact located on the boundary lines between the adjoining properties.

In *Trueblood v. Pierce,* 116 Colo. 221, 179 P.2d 671, we stated that "[p]laintiffs and their predecessors in title have been in possession of the easement for more than eighteen years; there is, as a result thereof, a presumption that their holding was adverse."

This same identical language was approved in *Lively v. Wick,* 122 Colo. 156, 221 P.2d 374, where it was applied in a so-called "fence" case. There it was held that where land claimed by a plaintiff was situated "behind" the defendant's fence which had been in existence for more than eighteen years, there was a presumption that the defendant's possession was adverse and that the plaintiff had the burden of overcoming this presumption. It is noted that in the *Lively* case we declared that the two main purposes of a fence are to act as a barrier and to mark a boundary and that in many cases it performs both functions. In the instant case there is little doubt but that the primary purpose of the McMurtry fence was to mark what was believed to be the boundary line. See, also, *Hodge v. Terrill,* 123 Colo. 196, 228 P.2d 984.

In *Vade v. Sickler,* 118 Colo. 236, 195 P.2d 390 this Court was confronted with a problem akin to that posed by the present writ of error, i.e., a fence which was intended to mark a boundary line but which through mistake and error did not. In that case we held that such fact did not, in and of itself, defeat a claim of adverse possession of that land which lay "behind" such fence, even though record title to such was in another, and that the issue as to whether the possession was *adverse* was a question of fact.

In holding that Ione McMurtry established her claim of ownership through adverse possession, the essence of the court's findings is as follows:

1. based on a survey J. O. McMurtry in 1935 constructed a fence on what was then believed to be the north and west boundary lines of his property;

2. that since 1935 Ione McMurtry and her family have at all times "openly and notoriously used the property inclosed by said fences";

3. that the McMurtrys in 1935 planted trees and shrubs along the north fence line;

4. that J. O. McMurtry in 1935 placed a shed not just along but in fact "on" the north fence line, which shed "tied into and acted as a part of the north fence line" and that this shed was also located in part on the twenty-one foot strip lying to the west of the McMurtry property; and

5. that the Riggses had not "used or exercised any dominion over the property in question until March 21, 1962."

Without detailing the evidence adduced upon trial, our review of the record convinces us that there is evidence to support the several findings of fact as made by the trial court and also its ultimate conclusion that such constituted adverse possession. There is indeed no doubt but that the McMurtrys "possessed" the land here in question for much more than eighteen years. Furthermore, as was said in the *Vade* case, their "intent must be that which reasonably appears from the nature and extent of the possession [thus] held," with the same being "usually a question of fact." Suffice it to say that in the instant case there is evidence to support the trial court's finding and conclusion that there was adverse possession of the McMurtrys for much more than the required eighteen years.

The Riggses also contend that McMurtry failed to establish with sufficient certainty the extent of her

damage and that in this regard the trial court's determination that she suffered actual damage in the amount of $500 and exemplary damage in the amount of $100 is totally unsupported by the record. It is of course true that monetary reparation cannot be based upon mere speculation, but on the other hand such need not be proven with mathematical certainty. It is sufficient if the plaintiff establishes by a preponderance of the evidence that he has in fact suffered damage or that his rights have been infringed and that his evidence in this regard provides a reasonable basis for a computation of the damage so sustained. Difficulty in proof of damages does not in and of itself destroy the right of recovery. See *Staples v. Langley,* 148 Colo. 498, 366 P.2d 861; *Swaim v. Swanson,* 118 Colo. 509, 197 P.2d 624; and *Scholes, Inc., v. U.S.* 295 F.2d 366.

The nature of the damage suffered in the instant case is admittedly difficult of proof. The tearing down of an old fence, the removal of a weather-beaten shed, the trampling of a strawberry patch, and injury to shrubs and trees are at best difficult to translate into dollars and cents. Be that as it may, we have examined the record in this regard, and hold that there is sufficient evidence to support the award of both actual and exemplary damages as made by the trial court.

The judgment is therefore affirmed.

MR. JUSTICE MOORE and MR. JUSTICE SUTTON concur.