James H. TULL, H.D. "Hersh" McGraw, Thomas M. Peck, Joseph Coyte, Albert R. Oesterle, Gerald D. Kraus, Alfred D. Peck, Willard E. Morley, Gordon Adler, Donald W. Mullison, the Parker-Cordova Partnership, Court Square Investment Company, Ptarmigan Investment Company, a Colorado General Partnership, and Ptarmigan Investment Company, a Colorado Limited Partnership, Petitioners,

v.

GUNDERSONS, INC., a South Dakota Corporation, Respondent.

No. 84SC57.

Supreme Court of Colorado,
En Banc.

Dec. 2, 1985.

942

Steven G. Francis, Fischer & Wilmarth, Fort Collins, for petitioners.

Wiley E. Mayne, Scott S. Barker, Holland & Hart, Denver, for respondent.

DUBOFSKY, Justice.

We granted certiorari to review the court of appeals' decision in *Gundersons, Inc. v. Tull,* 678 P.2d 1061 (1983) concerning the amount of proof necessary to prove lost profits in an action for breach of contract to construct a golf course. The court of appeals directed the Larimer County District Court to enter an award of damages based on lost profits, equipment leasing costs, and mitigation expenses. We affirm that decision in part, reverse in part, and remand the case for the district court to make further factual determinations.

The plaintiff, Gundersons, Inc., is a golf course construction company authorized to do business in Colorado. The defendants are Ptarmigan Investment Company (Ptarmigan) and its partners. On July 26, 1979, Ptarmigan accepted Gundersons' bid for construction of a golf course in Larimer County. Gundersons began work on the

project without a contract on August 6, 1979. On August 30, Ptarmigan and Gundersons executed a construction agreement. Under the agreement, Ptarmigan was responsible for obtaining financing for the construction.

Gundersons continued to work on the project until the end of November when bad weather forced it to suspend operations. Prior to the shutdown, Gundersons had received, in accordance with the construction agreement, monthly payments for work completed, less a 10% retainage withheld by Ptarmigan. Because Ptarmigan was unable to obtain financing to complete the project, Gundersons never resumed work; instead, Gundersons filed this breach of contract action against Ptarmigan.

After trial, the district court concluded that the August 30 agreement between the parties was a valid and enforceable contract that had been breached by Ptarmigan. The district court entered in Gundersons' favor a judgment of $43,504, the amount withheld from payment by Ptarmigan as retainage, plus interest. However, the district court denied Gundersons' damages based on lost profits because the court concluded that the evidence of lost profits presented by Gundersons did "not meet the burden of proof required." The court further concluded that Gundersons was not entitled to damages for the costs of leasing equipment used in the project and for costs involved in Gundersons' efforts to mitigate damages by finding other work.

Gundersons appealed the judgment of the district court on the damages issues. The court of appeals held that as a matter of law Gundersons had established lost profits with sufficient certainty and that the district court erred in refusing to award damages based on this item. The court of appeals also held that Gundersons was entitled to damages for equipment leasing costs and mitigation expenses.

I.

■ We agree with the court of appeals that Gundersons met its burden of proving that it was entitled to an award of damages. Although an award of damages cannot be based on mere speculation or conjecture, once the fact of damage has been established with the requisite degree of certainty, uncertainty as to the amount of damages will not bar recovery. *Peterson v. Colorado Potato Flake and Mfg. Co.*, 164 Colo. 304, 309, 435 P.2d 237, 239 (1967); *Donahue v. Pikes Peak Auto Co.*, 150 Colo. 281, 287–88, 372 P.2d 443, 446–47 (1962).

■ Here Gundersons was only required to establish the fact of damage with reasonable certainty.[1] And while there are conflicting views of the meaning of the reasonable certainty standard,[2] we think the standard should be interpreted as imposing on a plaintiff the burden of proving the fact of damage by a preponderance of the evidence. As we stated in *Riggs v. McMurty*, 157 Colo. 33, 39, 400 P.2d 916, 919 (1965):

It is of course true that monetary reparation cannot be based upon mere speculation, but on the other hand such need not be proven with mathematical certainty. It is sufficient if the plaintiff establishes by a preponderance of the evidence that he has in fact suffered damage or only that the fact of damages must be taken out of the area of speculation.... [T]he plaintiff must meet only the usual burden of proof required in a negligence case. (Footnotes omitted.)

On the other hand, it has been asserted that the reasonable certainty requirement "means ... that the quality of evidence must be of a higher caliber than is needed to establish most other factual issues in a lawsuit." Calamari and Perillo, *Contracts*, § 14–8 (2d ed. 1977).

---

1. *See* 22 Am.Jur.2d, Damages, § 24 ("[T]he courts have stated that only reasonable certainty is required in proving the fact ... of the injury.") (footnote omitted).

2. For example, Professor McCormick equates the reasonable certainty standard with a "probability" standard of proof. *McCormick on Damages*, Ch. 4, § 26, (1935). *See also* 22 Am.Jur.2d, Damages, § 22:

An analysis of the facts and holdings of the cases supports the conclusion that courts have used the term "reasonable certainty" to mean

that his rights have been infringed and that his evidence in this regard provides a reasonable basis for a computation of the damage so sustained.[3]

■ The parties agree that the applicable measure of damages is the amount of profit lost by Gundersons as a result of Ptarmigan's breach of contract. The formula for determining lost profits in actions involving breach of a construction contract was set out in *Comfort Homes v. Peterson*, 37 Colo.App. 516, 518–19, 549 P.2d 1087, 1089–90 (1976):

> The amount of ... damages has been described as ... the contract price less (1) any payments made ... on the contract, and (2) what it would have cost the builder if it had completed the [project] in accordance with the contract.

At trial, Gundersons presented 'estimates of lost profits ranging from $292,662 to $302,585.[4] These estimates were derived in accordance with the *Comfort Homes* formula.

The defendants assert that Gundersons' estimates of completion costs do not provide a sufficiently certain foundation for an award of damages. In support of their assertion, they refer to *McCormick on Damages*, Ch. 26 § 165 at 644 (1935) for the proposition that

> The difficulties of proving the prospective cost, that is, the further amount that it would cost to finish the job, cannot be adequately met in the case of a substantial building contract by merely placing the builder or his superintendent on the stand to give his lump sum opinion or estimate. This may be admissible, but, to warrant a finding, the estimate should include detailed figures as to the cost of

the different materials and operations, based, if possible, on "percentage of completion" reports. (Footnotes omitted.)

Whatever the force of this rule might be under other circumstances, we do not think that in this case it should totally preclude an award of damages in Gundersons' favor.

Here, as the court of appeals noted, Gundersons did not rely solely on Wallace Gunderson's lump sum estimate of lost profits. Gundersons' estimate was broken down into excavation, greens construction, drainage, bridges, irrigation, grassing, cart paths, abutments, and bunker sand, and the costs of completing each of these operations were listed and admitted into evidence. The defendants rebutted Gundersons' cost-of-completion estimates as to excavation and greens construction. The defendants presented evidence that the cost to complete the excavation work would amount to $180,000 rather than the $55,000 claimed by Wallace Gunderson. However, when the difference between these estimates is subtracted from Gundersons' estimate of lost profits of $292,662, the balance of claimed lost profits is $167,662. The defendants further noted a discrepancy of $20,000 between the cost-of-completion for greens construction indicated at trial and an earlier estimate given in response to interrogatories. Again, accepting the higher cost-of-completion figure as the correct one would result in the reduction but not the elimination of Gundersons' asserted lost profits. Gundersons' evidence was sufficient to discharge its burden of proving the fact of damages to a reasonable certainty.

■ Having met the threshold burden of proving the fact of damages, Gunder-

---

**3.** In reaffirming this aspect of our holding in *Riggs v. McMurty,* we note that the reasonable certainty standard was developed in this country in the last century as a device for controlling jury verdicts in lost profits cases. *See McCormick on Damages,* Ch. 4, § 25 (1935). We are confident that the now familiar preponderance of the evidence standard will afford defendants adequate protection against purely speculative awards of damages.

**4.** The difference in the two estimates is a result of different cost-of-completion figures relied on by Gundersons. At trial Wallace Gunderson, president of Gundersons, Inc., testified that he estimated the costs of completing the project to be approximately $600,000. (Presentation of testimony by an officer of a corporate plaintiff is frequently employed to establish lost profits. *See* R. Dunn, *Recovery of Damages for Lost Profits,* § 7.2 (2d ed. 1981).) Gundersons also introduced into evidence an itemized schedule of costs of completion totalling $609,923.

sons should not be barred from recovering damages because the amount of loss cannot be established with "mathematical certainty." *Riggs,* 157 Colo. at 39, 400 P.2d at 919. In proving the amount of damages it is sufficient for a plaintiff to provide "[a] reasonable basis for computation and the best evidence obtainable under the circumstances of the case which will enable the trier of the facts to arrive at a fairly approximate estimate of the loss." *A to Z Rental, Inc. v. Wilson,* 413 F.2d 899, 908 (10th Cir.1969). Here, the testimony of Wallace Gunderson and the itemized costs of completion serve as the basis for a fair and reasonable estimate of the amount of damages sustained by Gundersons. Further, the district court improperly excluded other evidence of the amount of lost profits in this case, specifically evidence of Gundersons' past profit experience on other projects and on the Ptarmigan project itself.[5] Such evidence is widely accepted as relevant to a determination of damages based on lost profits. As this court stated in *Lee v. Durango Music,* 144 Colo. 270, 278, 355 P.2d 1083, 1087 (1960), "[Lost profits] are anticipated profits which have their foundation in the past experience of the concern said to have suffered the loss." *See also Restatement (Second), Contracts,* § 352, comment (b) ("Evidence of past performance will form the basis for a reasonable prediction of ... future [profits].").

The admissibility of evidence of past profits is governed by the rule that "prior and subsequent experience must be comparable." R. Dunn, *Recovery of Damages for Lost Profits,* § 5.5 (2d ed. 1981). We conclude that the evidence of Gundersons' past profits on other projects is sufficiently comparable to its experience with the Ptarmigan project to warrant the admission of the evidence. Any dissimilarities between past projects and the Ptarmigan project may be considered in evaluating the weight of the evidence. As to the admissibility of Gundersons' profit experience on the Ptarmigan project itself, one commentator observes that "the simplest and most obvious method of calculating lost profits is a computation based upon the contract ... which has been invaded by the defendants' claimed wrongful conduct. This evidence is invariably held admissible." R. Dunn, *supra,* § 5.11G.

Gundersons should be allowed to prove the amount of damages sustained, and the defendants should have an opportunity to rebut Gundersons' evidence of lost profits. The district court is the most appropriate forum for resolution of the competing claims of the parties in this respect and accordingly we remand the case to the court of appeals to return it to the district court for a determination of the amount of profits lost by Gundersons as a result of Ptarmigan's breach of contract.

## II.

■ The court of appeals held that Gundersons was entitled to damages for the costs of leasing certain heavy equipment that had been "dedicated" to the Ptarmigan job. The court of appeals' assumption that equipment leasing costs that cannot be avoided by the plaintiff are compensable was correct. However, in view of the conflict in the evidence concerning the leases at issue here, a conflict which was not addressed by the district court, the court of appeals' award to Gundersons of the full amount of damages claimed on this item was not warranted.

Equipment leasing costs may be considered direct costs of completing a contract. But because such costs may not be avoided by a plaintiff as a result of a defendant's breach of a contract, it has been recognized that they should be included in the plaintiff's compensation. *See generally,* 22 Am.Jur.2d, Damages, § 178. Perhaps the most common method used to provide compensation for unavoidable costs is to not include them in the costs deducted from the contract price under the *Comfort Homes* formula. This approach is consistent with section 347 of the *Restatement*

---

**5.** The court of appeals did not address this issue, and the defendants assert that it was not properly presented for review by this court. However, we see no reason to avoid the question that is bound to arise on remand where, as the defendants note, the issue was fully briefed to the court of appeals.

*(Second), Contracts,* adopted by this court in *General Insurance Co. of America v. City of Colorado Springs,* 638 P.2d 752, 759 (Colo.1981) that provides:

> Subject to the limitations stated in §§ 350–53, the injured party [in a breach of contract action] has a right to damages based on his expectation interest as measured by (a) the loss in value to him of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach, less (c) any cost or other loss that he has avoided by not having to perform.

Because the costs of leasing equipment are not costs that the plaintiff "has avoided by not having to perform," it is appropriate to exclude these expenses from the amount deducted from the contract price as costs of completion.

■ The same arithmetic result may be achieved by deducting the unavoidable costs from the contract price and then awarding the amount of the deduction as damages.[6] Gundersons' assertion that the equipment leasing expenses were included in its estimate of costs of completion is supported by the record. Thus, if the existence and validity of the equipment leases had been established, the court of appeals would have been justified in this case in awarding as damages · the leasing costs. However, the defendants assert that Gundersons' claim for damages based on leasing costs is defective because the leases had expired before the contract was breached. Neither the district court nor the court of appeals addressed these critical allegations.[7]

■ On remand the district court should determine whether in fact Gundersons suffered any leasing expenses attributable to the Ptarmigan project after the date the contract was breached, and if so, the amount of such expenses. If Gundersons establishes equipment leasing costs, then it is entitled to compensation on this item.[8]

### III.

The court of appeals ruled that the district court erred in denying damages based on expenses Gundersons claimed it incurred in attempting to mitigate its losses after the contract was · breached. We affirm the ruling of the court of appeals.

■ A party injured by a breach of contract has a duty to make a reasonable effort to reduce the damage sustained. *See, e.g., Brenaman v. Willis,* 136 Colo. 53, 314 P.2d 691 (1957); *Hoehne Ditch Co. v. John Flood Ditch Co.,* 76 Colo. 500, 233 P. 167 (1925). The corollary of this principle is that a plaintiff is entitled to compensation for expenditures made in attempting to mitigate damages. *Hoehne Ditch Co.,* 76 Colo. at 508–09, 233 P. at 170–71. *See also McCormick on Damages,* Ch. 5, § 42 (1935).

---

6. *See* 22 Am.Jur.2d, Damages, § 178:

   The theory behind [the definition of lost profits] is that the plaintiff can minimize his damages by not making the expenditures which would have been required had the wrongful act of the defendant not intervened. If, however, those expenditures cannot reasonably be reduced by the plaintiff following the defendant's wrongful act, they should be compensated by the law of damages—either directly or by the device of not deducting them from the anticipated gross income.

   The preferable approach is to exclude the unavoidable costs from the costs deducted from the contract price. *See Restatement (Second), Contracts,* § 347.

7. The district court "conclude[d] that the plaintiff would not be entitled to damages claimed for the leasing of equipment ... since the damages would be limited for loss [sic] net profit if

proven." The basis of the district court's conclusion is obscure. If the court was indicating that damages for equipment leasing cost may not be awarded under any circumstances, then the conclusion was not a correct statement of · the law.

8. The defendants also assert that Gundersons is not entitled to compensation for equipment leasing expenses because all of Gundersons' equipment was leased from Fairway Leasing Company, a partnership owned by Wallace Gunderson and his brother Wynn. However, the defendants fail to specify the legal significance of these and related allegations. We agree with the court of appeals' conclusion that "the relationship between [Gundersons] and Fairway Leasing Company has no bearing on [Gundersons'] ability to recover damages for long term equipment leases."

The defendants here concede that mitigation expenses are recoverable as consequential damages in actions for breach of contract. However, they argue that Gundersons' proof of its claimed expenses was inadequate. That evidence consisted of a list of the projects bid in an attempt to mitigate the losses from the Ptarmigan project and the costs associated with each bid. Further evidence of expenses was provided by photocopies of credit card receipts that, according to Wallace Gunderson, reflected payments incurred in connection with the bids. The defendants neither cross-examined nor offered any rebuttal evidence on the claimed expenses. They now assert that Gundersons failed to meet its burden of proving that the claimed expenses were in fact related to its effort to find substitute work.

It is true, as the defendants point out, that the plaintiff in a breach of contract action bears the burden of proof with respect to damages, including consequential damages. However, we already have indicated that the burden of proving the fact of damages is not an onerous one. Gundersons' evidence was sufficient to establish the fact of mitigation expenses on a prima facie basis.[9] And, in the absence of any indication in the record that these expenses were not bona fide or that they were unreasonable,[10] there is no basis for disturbing the court of appeals' holding that Gundersons is entitled to the full amount of damages claimed on this item.[11]

Judgment affirmed in part, reversed in part, and case remanded to the court of appeals with directions to return it to the district court for further proceedings in accordance with this opinion.

---

9. In order to recover for claimed mitigation expenses in this case, Gundersons was required to prove not only that it had incurred expenses in bidding on other projects, but also that it could not have bid on these projects had Ptarmigan not breached the contract. *See Restatement (Second), Contracts* § 347, comment f. On direct examination, in response to the question "Would you have bid these projects if you still had the Ptarmigan job to do?", Wallace Gunderson replied, "No, we would not." This unchallenged testimony is adequate proof that the other projects were bid as substitutes for Ptarmigan. Gundersons is entitled to reasonable expenses incurred in its efforts to obtain substitute work, regardless of whether the efforts were ultimately successful. *See Restatement (Second), Contracts* § 347, comment c. However, the defendants would have been entitled to a deduction for any profits made by Gundersons as a result of its bidding on substitute projects. There are no allegations that Gundersons benefited as a consequence of any of its bids, and the defendants had the burden of showing at trial that Gundersons profited from any of the substitute projects. *Comfort Homes, Inc.,* 37 Colo.App. at 519, 549 P.2d at 1090 ("It is not a plaintiff's burden to produce the evidence on which any reduction of damages is to be predicated.").

10. The defendants had the burden of proving that the mitigation expenses were unnecessary or unreasonable. *Hoehne Ditch Co.,* 76 Colo. at 509, 233 P. at 171.

11. The defendants argue that the court of appeals improperly shifted the burden of proof with respect to the necessity and reasonableness of consequential damages. Gundersons responds that the court merely required the defendants to shoulder the burden of proving that the expenses were unreasonable in accordance with the *Hoehne Ditch* case. It is not necessary to resolve these conflicting interpretations of the court of appeals' opinion because even if the court did misconstrue the allocation of proving consequential damages, under the facts before us the validity of its holding in this respect was not affected.