52 F.3d 338
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 TRANS-RIM ENTERPRISES (USA), LTD., a Washington corporation,
Plaintiff-Appellant,
v.
ADOLPH COORS COMPANY, a Colorado corporation; Golden
Technologies Company, Inc., a Colorado corporation; Graphic
Packaging Corporation, a Colorado corporation; Coors
Brewing Company, a Colorado corporation, Defendants-Appellees.
 No. 94-1236.
 United States Court of Appeals, Tenth Circuit.
 April 7, 1995.
 
 Before TACHA, HENRY, and ALARCON,* Circuit Judges.
 ORDER AND JUDGMENT**
 ALARCON, Senior Circuit Judge.
 
 
 1
 In this diversity action, Trans-Rim Enterprises (USA), Ltd. ("Trans-Rim") appeals from the judgment entered against it following trial by jury on its claims for breach of contract implied in law, breach of a written confidentiality agreement, breach of fiduciary duty, and misappropriation of trade secrets. Trans-Rim contends that reversal is compelled because the district court erred in excluding evidence of Trans-Rim's lost profits, in admitting a chart into evidence, and in its instructions to the jury. We affirm because we conclude that the district court did not err in these rulings. We discuss these contentions and the facts pertinent thereto under separate headings.
 
 
 2
 I. DISMISSAL OF TRANS-RIM'S LOST PROFIT DAMAGES
 
 
 3
 Trans-Rim argues that the district court erred in granting the pretrial motion in limine filed by Coors Brewing Company, Golden Technologies Company, Inc., and Graphic Packaging Corporation (collectively "Coors") for an order excluding evidence of lost profit damages at trial. We review a district court's decision to grant a motion in limine excluding evidence for abuse of discretion. FDIC v. United Pac. Ins. Co., 20 F.3d 1070, 1081 (10th Cir.1994).
 
 
 4
 Approximately one-and-a-half years prior to trial, Coors moved for partial summary judgment regarding Trans-Rim's allegation that it was entitled to damages in the form of lost profits. On January 29, 1993, the district court denied Coors' motion for partial summary judgment. The district court reasoned that "the absence of prior profits does not create a 'per se' exclusion of loss of profits as an item of damages if sufficient competent evidence is proffered." The court also set forth the standard of causation Trans-Rim would have to meet to establish lost profits:
 
 
 5
 Under Colorado law, a plaintiff who seeks lost profits as a measure of damages must prove by competent evidence that such profits would have been received but for the injury caused by defendant. Republic National Life Insurance Co. v. Red Lion Homes, Inc., 704 F.2d 484, 489 (10th Cir.1983). The fact of damages must be reasonably certain. Tull v. Gundersons, Inc. 709 P.2d 940, 943 (Colo.1985). The reasonable certainty standard has been interpreted as imposing on a plaintiff the burden of proving the fact of damages by a preponderance of the evidence. Id. Once the fact of damages is proved by a preponderence of the evidence, however, "uncertainty as to the amount of damages will not bar recovery." Miami International Realty Co. v. Paynter, 841 F.2d 348, 350 (10th Cir.1988) (quoting Tull, 709 P.2d at 943.).
 
 
 6
 The district court determined that Trans-Rim raised a genuine issue of material fact regarding whether it had suffered lost profits.
 
 
 7
 Subsequently, on November 1, 1993, Coors moved for partial summary judgment on Trans-Rim's cause of action for breach of an "implied-in-fact contract for joint venture to build the project." Coors contended that it was entitled to summary judgment because there was no meeting of the minds on the essential terms of the proposal to enter into a joint venture to construct a recycled paper mill and box plant code-named Project Alaska ("Project Alaska"). Under Colorado law, "[i]mplied contracts arise from conduct of the parties which evidences a mutual intention to contract with each other; however, there must be a meeting of the minds before any contract will be implied." A.R.A. Mfg. Co. v. Cohen, 654 P.2d 857, 859 (Colo.Ct.App.1982).
 
 
 8
 Trans-Rim argued, in opposition, that the parties formed an implied in fact contract to enter into the Project Alaska joint venture on or about March 7, 1990 through their acts, conduct, oral statements, and writings. On January 27, 1994, the district court granted Coors' motion for partial summary judgment to dismiss Trans-Rim's claim for breach of implied in fact contract. After a careful review of all the evidence before it, the district court concluded:
 
 
 9
 [The] evidence constitutes a mere scintilla of evidence of an implied-in-fact contract and no reasonable juror could find that the parties reached a meeting of the minds or intended to form a binding contract on March 7, 1990.... The evidence overwhelmingly supports Coors' position that the parties' negotiations continued concerning the essential terms of a joint venture agreement and that they never reached a meeting of the minds on its essential terms. No reasonable jury could find otherwise.
 
 
 10
 Shortly thereafter, on February 25, 1994, Coors filed a motion in limine to exclude evidence of lost profits. Coors asserted that the district court should reconsider its January 29, 1993 ruling allowing the issue of lost profits to go to the jury, in light of the court's January 27, 1994 order dismissing Trans-Rim's claim for breach of an implied in fact contract to enter into the Project Alaska joint venture. The district court granted Coors' motion in limine to exclude evidence of lost profits on March 17, 1994. The district court held that, because Coors was not contractually obligated to participate in the joint venture, it was not liable for damages for lost profits. The district court reasoned:
 
 
 11
 Trans-Rim's implied-in-fact contract claim, which I dismissed in January 1994, was the only claim alleging conduct which could be construed to proximately cause Trans-Rim's alleged loss of profits from the joint venture project. Trans-Rim's claims for misappropriation of trade secrets, breach of contract and confidentiality agreements, breach of fiduciary duty and breach of duty not to disclose confidential information, do not allege a legal duty by Coors to joint venture the project. Rather, these claims are based upon the proposition that Coors disclosed confidential information or trade secrets to third-parties. Thus, even if these claims are meritorious, Trans-Rim cannot meet the causation test and prove by a preponderance of the evidence that "but for" Coors' wrongdoing the project would have come to fruition. In short, the predicate in this case for such damages--the terms of an agreement to joint venture the project--has dropped out of this case.[1]
 
 
 12
 Trans-Rim contends in this appeal that it was entitled to present evidence to the jury of lost profits as damages for breach of a written confidentiality agreement, breach of fiduciary duty, and misappropriation of trade secrets. Trans-Rim reasons that the alleged disclosures of confidential information by Coors allowed Coors to obtain long-term price concessions from another paper supplier. According to Trans-Rim, these concessions served as the impetus for Coors to abandon the Project Alaska joint venture. Thus, Trans-Rim argues that it is entitled to a share of the profits Project Alaska would have generated if Coors had not violated the confidentiality agreement, breached its fiduciary duty, and disclosed trade secrets.
 
 
 13
 Trans-Rim's argument overlooks the fact that liability must be established before damages may be awarded. In this case, Trans-Rim failed to convince the jury by a preponderance of the evidence that Coors violated the confidentiality agreement, breached its fiduciary duty, or disclosed trade secrets. Rather, the jury returned a verdict in favor of Coors and against Trans-Rim on each of Trans-Rim's theories of liability.[2] Absent a determination that Coors was liable, Trans-Rim's contention that lost profits were a proper measure of damages is moot. Because we conclude that the jury verdict in favor of Coors and against Trans-Rim on all theories of liability is dispositive, we need not reach the question whether lost profits are a proper measure of damages on the theories of liability presented by Trans-Rim to the jury.
 
 II. ADMISSION OF EVIDENCE
 
 14
 On April 11, 1994, the first day of trial, the district court denied Trans-Rim's motion in limine to exclude a chart prepared by a nonparty, Inland Container Corporation ("Inland"), comparing Inland's pricing for container board supplied to Coors with Inland's pricing for container board supplied to other national accounts from the beginning of 1987 through the first quarter of 1993 (the "Inland chart").[3] Coors utilized the chart at trial to demonstrate that the discounts on paper packaging products Coors received from Inland were driven by market forces, rather than any disclosures of confidential information. Trans-Rim contends that the Inland chart should have been excluded from evidence because the chart summarized information that was not itself admissible. The district court permitted admission of the Inland chart pursuant to Fed.R.Evid. 1006. Rule 1006 provides:
 
 
 15
 The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.
 
 
 16
 We review the evidentiary rulings of a district court for abuse of discretion. Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1433 (10th Cir.1993). The admissions of summaries under Rule 1006 is within the sound discretion of the trial court. Harris Market Research v. Marshall Mktg and Communications, Inc., 948 F.2d 1518, 1525 (10th Cir.1991). Pursuant to this deferential standard of review, an evidentiary ruling will be reversed only if we have a " 'definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.' " Gilbert v. Cosco Inc., 989 F.2d 399, 402 (10th Cir.1993) (citations omitted).
 
 
 17
 In order for a summary to be admissible, it must be drawn from records which are otherwise admissible. Harris, 948 F.2d at 1525; 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence p 1006 (1994) ("Before the chart, summary, or calculation may be admitted, it is necessary for the party offering the exhibit to lay a proper foundation for the admission of the original or duplicate materials upon which the exhibit is based[.]").
 
 
 18
 The Inland chart summarized information from a 16,000-page computer printout of certain invoices contained in Inland's computer sales file. It is undisputed that the complete computer sales file meets an exception to the hearsay rule by qualifying as records of regularly conducted business activity pursuant to Fed.R.Evid. 803(6).[4] Trans-Rim contends, however, that Coors failed to lay the proper foundation for admission of the computer printout. As with any other business record, a computer printout is not admissible pursuant to Rule 803(6) unless the offeror has established a foundation in the record for its introduction. United States v. Cestnik, 36 F.3d 904, 909 (10th Cir.1994), cert. denied, 115 S.Ct. 1156 (1995).
 
 
 19
 Computer business records are admissible if (1) they are kept pursuant to a routine procedure designed to assure their accuracy, (2) they are created for motives that tend to assure accuracy (e.g. not including those prepared for litigation), and (3) they are not themselves mere accumulations of hearsay.
 
 
 20
 United States v. Hernandez, 913 F.2d 1506, 1512 (10th Cir.1990), cert. denied, 499 U.S. 908 (1991) (quoting Capital Marine Supply v. M/V Roland Thomas, II, 719 F.2d 104, 106 (5th Cir.1983)).
 
 
 21
 The testimony of Gerald Norris, administrative manager of the container division for Inland, laid the foundation required by Rule 803(6). Mr. Norris testified at his deposition that he was personally involved in designing the computer sales file and responsible for supervising the writing of programs to retrieve information contained in the computer sales file. Mr. Norris explained that an invoice is created in the ordinary course of business by an order entry person at Inland's box plants as the customer places an order. The invoices are transmitted electronically from around the country each evening to the computer sales file in Indianapolis in the ordinary course of Inland's business. Inland depends upon this electronic data as its records of business transactions and the accuracy of the information is verified through internal data checks.
 
 
 22
 We reject Trans-Rim's contention that because the computer printout was prepared for trial, it does not qualify under the business records exception. The business records exception focuses upon whether data was inputted, not extracted, as a regular business practice. See Hernandez, 913 F.2d at 1512-13 ("[S]o long as the original computer data compilation was prepared pursuant to a business duty in accordance with regular business practice, the fact that the hard copy offered as evidence was printed for purposes of litigation does not affect its admissibility."); AMPAT/Midwest, Inc. v. Illinois Tool Works Inc., 896 F.2d 1035, 1045 (7th Cir.1990) (Data which was not "manufactured for litigation ... [but] lifted out of regular business records" was admissible.). Even if the proper focus were on the output of data, the district court specifically found that the printout at issue was reliable as an extraction of historical data, rather than a summary or manipulation of information. Because the computer printout was admissible under the business records exception, the district court did not abuse its discretion in admitting the Inland chart into evidence.
 
 
 23
 Trans-Rim also challenges the admission of the Inland chart on the basis that Coors failed to produce certain underlying documents. Trans-Rim claims that although it received the computer printout, it was entitled to inspect the "sales records and other information upon which the 'National Accounts' line on the chart was purportedly based." Trans-Rim's argument is without merit because those records were unavailable pursuant to Fed.R.Evid. 1004(2).[5]
 
 
 24
 On March 15, 1994, the United States District Court for the Southern District of Indiana granted a protective order shielding Inland from disclosing to Trans-Rim information "about Inland's specific customers, including the terms and conditions of specific sales and sales negotiations." Trans-Rim's theory that the underlying records were available to Coors in spite of the protective order is unsupported by fact or law. We agree with the district court that, to the extent some underlying data was not provided, the data was not obtainable pursuant to Fed.R.Evid. 1004(2). Accordingly, we conclude that the district court acted within its sound discretion in admitting the Inland chart.
 
 III. JURY INSTRUCTIONS
 
 25
 Trans-Rim alleges error in several jury instructions. Specifically, Trans-Rim alleges that the court failed to instruct the jury on the law of oral contracts, that the instructions improperly restricted the definition of confidential information, and that the instructions imposed an improper temporal limitation on Trans-Rim's implied in law contract claim.
 
 
 26
 A. Failure to Instruct Regarding Oral Contracts
 
 
 27
 Trans-Rim contends that the district court erred in refusing to instruct the jury on the law of oral contracts. Trans-Rim offered Plaintiff's Proposed Instruction Numbers 5 and 18,[6] pertaining to its claim that Coors and Trans-Rim entered into an oral contract in December 1988 not to "shop" Project Alaska and not to disclose confidential information regarding Project Alaska to third parties. Trans-Rim asserts that the jury should have been instructed on Trans-Rim's breach of oral contract cause of action because it accrued before Coors Company and Trans-Rim entered into a written contract in May 1989.
 
 
 28
 This court reviews a district court's refusal to give a proposed jury instruction de novo. Watson v. Blankinship, 20 F.3d 383, 392 (10th Cir.1994). In reviewing instructions given to the jury, " 'we consider all the jury heard, and from the standpoint of the jury, decide not whether the charge was faultless in every particular, but whether the jury was misled in any way and whether it had understanding of the issues and duties to determine these issues.' " Resolution Trust Corp. v. Stone, 998 F.2d 1534, 1549 (10th Cir.1993) (citation omitted). Issuance of erroneous instructions or omission of proper instructions requires reversal " 'only if we have substantial doubt whether the instructions, taken together, properly guided the jury in its deliberations.' " Considine v. Newspaper Agency Corp., 43 F.3d 1349, 1365 (10th Cir.1994) (citations omitted).
 
 
 29
 The district court refused to instruct the jury on the law of oral contracts because it determined that the Mutual Confidential Disclosure Agreement ("Confidentiality Agreement") entered into between Coors and Trans-Rim on May 2, 1989 contained an integration clause which "obliterated" all prior express agreements, oral or written, between the parties.[7] We agree. Paragraph Five of the Confidentiality Agreement provides as follows:
 
 
 30
 This Agreement constitutes the underlying entire agreement between the Parties and supersedes all other communications, oral or written, relating to Confidential Information.
 
 
 31
 Under Colorado law, an integration clause will "limit future contractual disputes to issues relating to the reciprocal obligations expressly set forth in the executed document." Keller v. A.O. Smith Harvestore Prods., Inc., 819 P.2d 69, 72 (Colo.1991). When parties engage in arms-length negotiations and enter into an agreement intended to represent a final and complete understanding, the terms of that agreement will be enforced. Id.
 
 
 32
 We conclude that under the explicit terms of this integration clause, all prior agreements between the parties merged and the Confidentiality Agreement governed the entire course of dealings between the Trans-Rim and Coors. As such, Trans-Rim was not entitled to prosecute a separate claim based on prior oral understandings.
 
 B. Definition of Confidential Information
 
 33
 Trans-Rim also claims that the district court erred in instructing the jury that the confidential information as defined in the Confidentiality Agreement was limited to information that was (1) in writing, and (2) marked "confidential," "secret," "proprietary," or with words to that effect. Trans-Rim asserts that the district court's interpretation violated fundamental principles of contract interpretation. More specifically, Trans-Rim contends that the instruction was erroneous because Coors and Trans-Rim intended the Confidentiality Agreement also to encompass intangible information and documents that were not stamped "confidential" or with similar words.
 
 
 34
 The challenged jury instruction provided as follows:
 
 
 35
 The Court has determined as a matter of law that the written Mutual Confidential Disclosure Agreement entered into by the parties in May of 1989 required that confidential information which the parties intended to protect under that agreement had to be in writing and marked "confidential," "secret," "proprietary," or words to that effect[.]
 
 
 36
 We believe that the instruction accurately reflects the unambiguous language of the Confidentiality Agreement which provides, in pertinent part, that:
 
 
 37
 "Confidential Information" as used herein shall include all information emanating from the Parties, their employees and agents, which relates to the Mill, the Plants, the attendant processes and facilities, the Products of the Mill and Plants and shall include, but shall not be limited to, trade secrets, technical information, designs, drawings, processes, systems, procedures, formulas, test data, know-how, improvements, price lists, financial data, purchasing and sales strategies, supplies, vendors, sketches and plans (engineering, architectural or otherwise), and any other compilation of information whatsoever, in written form and marked "confidential," "secret," "proprietary," or the like ...[.]
 
 
 38
 Trans-Rim argues that the parties intended to protect information which was not in writing, such as know-how, and written information that was not stamped "confidential," such as the Linerboard Mill Feasibility Report prepared by Hipp Engineering Ltd. in August 1989. If a contract is unambiguous, however, "extrinsic evidence is not admissible to prove the parties' intent, and the parties' intent must be determined from the terms of the contract." Fibreglas Fabricators, Inc. v. Kylberg, 799 P.2d 371, 374 (Colo.1990). The Confidentiality Agreement defines as confidential all information (1) emanating from the parties; (2) relating to the project; (3) which is the type of information given in the examples; and (4) which is in written form and specifically marked confidential or with words to that effect. The final phrase, "in written form and marked 'confidential,' 'secret,' 'proprietary,' or the like" is set apart by punctuation and clearly modifies the entire preceding paragraph. Accordingly, the jury instruction requiring that confidential information be in written form and appropriately marked fairly guided the jury as to the unambiguous meaning of confidential information.
 
 
 39
 C. Temporal Limitation for Unjust Enrichment Claim
 
 
 40
 Trans-Rim asserts that the jury instructions that defined the elements of a contract implied in law, and the portion of the instruction summarizing Trans-Rim's implied in law contract claim improperly precluded the jury from considering the benefits Coors realized after May 2, 1989. According to Trans-Rim, this "rendered the claim unprovable, because the value of the benefit Trans-Rim conferred on Coors was not established until after May 2, 1989."
 
 
 41
 Instruction Numbers 7, 8, and 19, respectively, provide as follows:
 
 Instruction No. 7
 
 42
 Contract implied in law is a legal doctrine that is designed to prevent unjust enrichment of one person at the expense of another.
 
 
 43
 The doctrine applies when one person confers a benefit on another, the other appreciates the value of the benefit and accepts and retains it, and the circumstances are such that it would be unfair for the person retaining the benefit to do so without paying its reasonable value. In such circumstances the law treats the party who has retained the benefit as having contracted to pay the other party the reasonable value of the benefit. The law does so even though the parties may not have formally and expressly contracted with regard to payment or compensation, and even though they may not agree on the value of the benefit to the party who has retained it.
 
 
 44
 The word "benefit" denotes any form of advantage. One person or company confers a benefit upon another by giving the other possession of property or by saving the other from expense or loss.
 
 Instruction No. 8
 
 45
 In order for Trans-Rim to recover from the Defendants on its claim of contract implied in law between October 10, 1988 and May 2, 1989, you must find that each of the following propositions has been proved:
 
 
 46
 (1) That Trans-Rim conferred upon any one or more of the defendants information of value to the defendant and thereby benefitted the defendant;
 
 
 47
 (2) That the defendant appreciated, accepted, and retained the benefit for its own use; and
 
 
 48
 (3) That the defendant did so under circumstances that make it unfair for the defendant to retain the benefit without paying Trans-Rim its reasonable value.
 
 
 49
 If you find that each of these propositions has been proven by a preponderance of the evidence, then your verdict must be for Trans-Rim on its claim of contract implied in law.
 
 
 50
 On the other hand, if you find that any one or more of these propositions has not been proved by a preponderance of the evidence, then your verdict must be for the defendants on this claim.
 
 Instruction No. 19
 
 51
 The plaintiff, Trans-Rim Enterprises, has sued the defendants for the same damages or recovery under different claims for relief. The claims for relief on which Trans-Rim has sued and on which you have been instructed are:
 
 
 52
 (1) Contract implied in law between October 10, 1988 and May 2, 1989 to prevent unjust enrichment;
 
 
 53
 (2) Breach of a contract made in May 1989 which obligated each defendant to keep confidential information strictly confidential, to disclose that information only to its employees, representatives and agents, and to use the confidential information solely for the purpose of evaluating the proposed recycle mill project called Project Alaska;
 
 
 54
 (3) Breach of fiduciary duty; and
 
 
 55
 (4) Misappropriation of Trade Secrets owned by Trans-Rim.
 
 
 56
 If you find for Trans-Rim on more than one of its claims for relief, you may award Trans-Rim damages only once for the same losses and only once for the same unjust enrichment.
 
 
 57
 Trans-Rim did not object to Instruction Numbers 7, 8, and 19 at trial and therefore waived any objections to these instructions pursuant to Fed.R.Civ.P. 51. Accordingly, we review Trans-Rim's contention of instructional error on appeal under the plain error standard. Gilbert v. Cosco Inc., 989 F.2d 399, 404 (10th Cir.1993). The plain error standard requires us to find a " 'fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.' " Id. (citation omitted).
 
 
 58
 The temporal limitation on Trans-Rim's implied contract claim was not error. An implied in law contract is imposed by a court for reasons of justice and does not require a meeting of the minds between the parties. See First Interstate Bank v. Tanktech, Inc., 864 P.2d 116, 120 n. 6 (Colo.1993); 1 Samuel Williston, A Treatise on the Law of Contracts Sec. 1:6 (Richard A. Lord ed., 4th ed. 1990). Once the parties expressly agreed to the terms of their relationship, it was no longer necessary, or possible, to imply a contract. The district court properly instructed the jury that the implied in law contract claim could provide a potential basis for recovery only until May 2, 1989, when the parties exhibited a meeting of the minds by entering into the written Confidentiality Agreement. Accordingly, the jury instructions restricting recovery on the implied in law contract theory until May 2, 1989 were legally correct.
 
 
 59
 AFFIRMED.
 
 
 
 *
 Honorable Arthur L. Alarcon, United States Senior Circuit Judge for the Ninth Circuit, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 The March 17, 1994 order also held that the link between Trans-Rim's promissory estoppel claim and lost profit damages was too speculative as a matter of law. Trans-Rim dropped its claim for promissory estoppel in the middle of trial. Accordingly, we do not review this portion of the ruling
 
 
 [2]
 On April 22, 1994, the jury returned its verdict which read, in pertinent part, as follows:
 QUESTION 1:
 Did Plaintiff prove its claim for breach of a contract, implied in law,
 during the period of October 10, 1988 through May 2, 1989?
 YES NO
 X
 ------------------- ------------------
 QUESTION 2:
 Did Plaintiff prove its claim for breach of a written confidentiality
 agreement:
 YES NO
 X
 ------------------- ------------------
 QUESTION 3:
 Did Plaintiff prove its claim for breach of fiduciary duty:
 YES NO
 X
 QUESTION 4:
 Did Plaintiff prove its claim for misappropriation of trade secrets:
 YES NO
 X
 ------------------- ------------------
 
 
 [3]
 Initially, the Inland Chart also provided Inland's pricing for container board supplied to the glass industry and the brewing industry. The district court ruled that the Inland Chart should be modified by the exclusion of the glass industry and brewing industry lines. The modified version of the Inland Chart was the one admitted at trial and at issue in this appeal
 
 
 [4]
 Fed.R.Evid. 803(6) provides, in pertinent part, that:
 A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of the information or the circumstances of preparation indicate lack of trustworthiness.
 
 
 [5]
 Fed.R.Evid. 1004 provides, in pertinent part, that:
 The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if--
 .. (2) Original not obtainable
 No original can be obtained by any available judicial process or procedure ...
 
 
 [6]
 Proposed Instruction Number 5 provided:
 In order for Trans-Rim to recover from the Defendants on its claim of breach of an oral contract made in 1988, Trans-Rim must prove each of the following elements by a preponderance of the evidence:
 
 
 [1]
 That Trans-Rim entered into an oral contract with any one of the defendants under which the defendant was obligated to keep certain information confidential and to use it solely for the purpose of evaluating the project called Project Alaska, and not to "shop" the project;
 
 
 [2]
 That any one or more of the defendants breached the contract by disclosing confidential information to third parties and/or by "shopping" the project;
 
 
 [3]
 That, prior to the breach, Trans-Rim had been performing its own obligations under the contract; and
 
 
 [4]
 That the breach of the agreement enabled a defendant to obtain an economic or competitive benefit to the exclusion of Trans-Rim
 If you find that each of these propositions has been proved by a preponderance of the evidence, then your verdict on Trans-Rim's claim for breach of oral confidentiality agreement must be for Trans-Rim and against the defendants. On the other hand, if you find that any one or more of these propositions has not been proved by a preponderance of the evidence, then your verdict must be for the defendants on that claim.
 Proposed Instruction Number 18 provided:
 A contract may be written or oral. For a binding contract to exist, each party to the contract must have understood and agreed to the essential terms of the claimed contract. In the case of an oral contract, the parties' understanding and agreement, if any, may be inferred from their conduct, spoken statements, and writings, or from a combination of their conduct, spoken statements, and writings.
 
 
 [7]
 The Confidentiality Agreement was executed by Trans-Rim and Adolph Coors Company. Because the parties do not distinguish between Adolph Coors Company and the other Appellees, we also do not draw this distinction